UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID CRAIG COLVILLE,
      Petitioner,

vs.                                Case No.:  3:21cv850/LAC/EMT

RICKY D. DIXON,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner David Craig Colville (Colville) filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 7).  Respondent (the State) filed an answer and relevant portions of the state court record (ECF Nos. 21, 22).  Colville filed a reply (ECF No. 26).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B)–(C) and Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Colville is not entitled to habeas relief.

## I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 22).[1]  Colville was charged in the Circuit Court in and for Santa Rosa County, Florida, Case No. 2014-CF-1376, with ten counts of sexual battery while in a position of familial or custodial authority (victim 12 years of age or older but less than 18 years of age) (Counts 1–10), one count of lewd or lascivious molestation (victim 12 years of age or older but less than 16 years of age) (Count 11), and one count of lewd or lascivious conduct (Count 12) (ECF No. 22-12 at 26–29 (amended information)).  A jury trial was held on July 15–16, 2015 (ECF No. 22-2 at 26–85, ECF Nos. 22-3, 22-4, 22-5, 22-6 (transcript of jury trial)).  The jury found Colville guilty as charged on all counts (ECF No. 22-12 at 48–51 (verdict)).  On September 9, 2015, the court sentenced Colville to terms of thirty years in prison on Counts 1 through 10 and terms of fifteen years in prison on Counts 11 and 12, with all sentences to run consecutively (ECF No. 22-16 at 41–47 (judgment); ECF No. 22-24 at 315–49 (transcript of sentencing)).  The court also designated Colville a sexual predator (ECF No. 22-16 at 51–52 (Order Designating Defendant as a Sexual Predator)).

---

[1] Citations to the state court record refer to the document numbers and page numbers assigned by the court's electronic filing system.

Case No.:  3:21cv850/LAC/EMT

Colville filed a motion to correct sentencing error in the trial court, pursuant to Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure (ECF No. 22-17 at 12–17 (Rule 3.800(b)(2) motion)).  The trial court denied the motion (*id.* at 20–21 (order)).

Colville appealed the judgment and sentences to the Florida First District Court of Appeal (First DCA), Case No. 1D15-4529 (ECF No. 22-19 (Colville's initial brief); ECF No. 22-20 (State's answer brief); ECF No. 22-21 (Colville's reply brief)).  On June 6, 2017, the First DCA affirmed the judgment and sentences per curiam without written opinion (ECF No. 22-22 (opinion)).  *Colville v. State*, 227 So. 3d 567 (Fla. 1st DCA 2017) (Table).  The mandate issued June 22, 2017 (ECF No. 22-30 at 22 (mandate)).

On August 3, 2017, Colville filed a motion for mitigation and reduction of sentence in the state circuit court, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (ECF No. 22-30 at 24–29 (Rule 3.800(c) motion)).  The state court denied the motion in an order rendered on September 5, 2017 (*id.* at 33–34 (order)).

On June 4, 2018, Colville filed a counseled motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (ECF No. 22-30 at 43–92 (Rule 3.850 motion)).  Colville filed an

amended Rule 3.850 motion on December 7, 2018 (*id.* at 816–66 (amended Rule 3.850 motion)).  The circuit court held a limited evidentiary hearing on October 18, 2019 (ECF No. 22-30 at 2225 through ECF No. 22-31 at 26 (transcript of evidentiary hearing)).  The circuit court denied Colville's amended Rule 3.850 motion in an order rendered on January 24, 2020 (ECF No. 22-31 at 39–54 (order)).  Colville appealed the decision to the First DCA, Case No. D20-1776 (ECF No. 22-26 (Colville's initial brief); ECF No. 22-27 (State's answer brief); ECF No. 22-28 (Colville's reply brief)).  The First DCA affirmed the circuit court's decision per curiam without written opinion on March 17, 2021 (ECF No. 22-29 (decision)). *Colville v. State*, 315 So. 3d 1191 (Fla. 1st DCA 2021) (Table).  The mandate issued May 28, 2021.  Colville sought review in the Florida Supreme Court, Case No. SC21-759.  On May 24, 2021, the Florida Supreme Court dismissed the case for lack of jurisdiction. *Colville v. State*, No. SC 21-759, 2021 WL 2259400, at *1 (Fla. May 24, 2021).

During the pendency of the Rule 3.850 proceeding and appeal, Colville filed numerous applications for post-conviction relief in the state courts.

On February 10, 2020, Colville filed a pleading in the Florida Supreme Court, Case No. SC20-193, which the court treated as a petition for writ of habeas corpus (*see* ECF No. 22-36 (pleading); ECF No. 22-31 at 409 (acknowledgement of new

case)).  On February 27, 2020, the Florida Supreme Court dismissed the case on the ground that the relief sought was not authorized (ECF No. 22-37 (order)).  *Colville v. State*, No. SC20-193, at *1, 2020 WL 970340, at *1 (Fla. Feb. 27, 2020).

On February 26, 2020, Colville filed a petition for writ of prohibition in the Florida Supreme Court, Case No. SC20-296 (ECF No. 22-38 (petition); ECF No. 22-31 at 426 (acknowledgement of new case)).  On April 3, 2020, the Florida Supreme Court dismissed the petition as facially insufficient (ECF No. 22-39 (order)).  *Colville v. State*, No. SC20-296, 2020 WL 1656224, at *1 (Fla. April 3, 2020).  Colville filed a motion for rehearing (ECF No. 44 (motion), which the court denied on July 1, 2020 (ECF No. 45 (order)).  *Colville v. State*, No. SC20-296, 2020 WL 3578495, at *1 (Fla. July 1, 2020).

On April 17, 2020, Colville filed a Motion to Set Aside Judgment in the state circuit court (ECF No. 22-31 at 439–42 (motion)).  The circuit court denied the motion as untimely, successive, and non-complaint with the requirements of Rule 3.850(c), (h), (n) (ECF No. 22-30 at 446–47 (order)).  Colville appealed the decision to the First DCA, Case No. D20-1783 (ECF No. 22-32 at 2–12 (Colville's initial brief); ECF No. 22-33 (State's answer brief); ECF No. 22-34 (Colville's reply)).  The First DCA affirmed the circuit court's decision per curiam without written opinion on December 10, 2020 (ECF No. 22-35 (decision)).  *Colville v. State*, 308

So. 3d 565 (Fla. 1st DCA 2020) (Table).  The mandate issued January 7, 2021.

Colville sought review in the Florida Supreme Court, Case No. SC21-759 (ECF No.

22-46 (notice of appeal)).  On May 24, 2021, the Florida Supreme Court dismissed

the case for lack of jurisdiction (ECF No. 22-47 (order)).  *Colville v. State*, No.

SC21-759, 2021 WL 2259400, at *1 (Fla. May 24, 2021).

On May 22, 2020, Colville filed a petition for writ of habeas corpus in the

state circuit court (ECF No. 22-31 at 491–94 (petition)).  The state court dismissed

the petition on June 3, 2020 (*id.* at 505–06).

On May 22, 2020, Colville filed a petition for writ of mandamus in the Florida

Supreme Court, Case No. SC20-726 (ECF No. 22-42 (petition); ECF No. 22-31 at

483 (acknowledgement of new case)).  On July 1, 2020, the Florida Supreme Court

dismissed the petition as facially insufficient (ECF No. 22-43 (order)).  *Colville v.

State*, No. SC20-726, 2020 WL 3568242, at *1 (Fla. July 1, 2020).

On May 29, 2020, Colville filed a petition for writ of quo warranto in the

Florida Supreme Court, Case No. SC20-759 (ECF No. 22-40 (petition); ECF No.

22-31 at 499 (acknowledgement of new case)).  On July 1, 2020, the Florida

Supreme Court denied the petition as procedurally barred (ECF No. 22-41 (order)).

*Colville v. State*, No. SC20-759, 2020 WL 3568352, at *1 (Fla. July 1, 2020).

On November 28, 2020, Colville filed a second Rule 3.850 motion in the state circuit court (*see* ECF No. 22-50 at 81–83 (order dismissing Rule 3.850 motion)). The state court dismissed the motion as untimely, procedurally barred, and successive in an order rendered on January 25, 2021 (*id.*).  Colville appealed the decision to the First DCA, Case No. 1D21-421 (ECF No. 22-54 (Colville's initial brief)).  On October 8, 2021, the First DCA barred Colville from further pro se filings in Case No. 1D21-421 and future pro se filings in the First DCA related to his criminal judgment and sentence (ECF No. 22-62 (order)).  The court subsequently affirmed the circuit court's dismissal of the second Rule 3.850 motion, per curiam without written opinion.  *Colville v. State*, No. 1D21-421, 2021 WL 6110517, at *1 (Fla. 1st DCA Dec. 27, 2021) (Table).

On January 14, 2021, Colville filed motions to correct illegal sentence in the state circuit court, challenging his sexual predator designation (ECF No. 22-50 at 27–28, 34–37 (motions)).  The state court denied the motions in an order rendered on March 1, 2021 (*id.* at 171–72 (order)).

On February 5, 2021, Colville filed a third Rule 3.850 motion in the state circuit court (ECF No. 22-50 at 116–33 (Rule 3.850 motion)).  The state court dismissed the motion as untimely and procedurally barred in an order rendered on February 22, 2021 (*id.* at 147–49 (order)).  Colville appealed the decision to the First

DCA, Case No. 1D21-0709 (ECF No. 22-51 (initial brief)).  The First DCA affirmed the circuit court's decision on June 29, 2021, and warned Colville that any future filings that the court deemed frivolous may result in the imposition of sanctions (ECF No. 22-52 (decision)).  *Colville v. State*, 324 So. 3d 32, 33 (Fla. 1st DCA 2021) (Mem).

On March 26, 2021, Colville filed a pleading titled, "Nota Bene" in the Florida Supreme Court, Case No. SC21-498 (ECF No. 22-48 ("Nota Bene")).  On April 1, 2021, the Florida Supreme Court dismissed the pleading for lack of jurisdiction (ECF No. 22-49 (order)).

On March 26, 2021, Colville filed a motion to correct illegal sentence, motion to vacate, and motion to disqualify in the state circuit court (ECF No. 22-64 at 19–23, 26, 36–39 (motions)).  The state court denied the motions in three separate orders rendered on April 12, 2021 (*id.* at 50, 52–53, 78 (orders)).  Colville appealed to the First DCA, Case No. 1D21-1263 (ECF No. 22-65 (Colville's initial brief); ECF No. 22-66 (State's initial brief); ECF No. 22-67 (Colville's reply brief)).  The First DCA affirmed the circuit court's decision per curiam without written opinion on December 27, 2021.  *Colville v. State*, No. 1D21-1263, 2021 WL 6110551, at *1 (Fla. 1st DCA Dec. 27, 2021) (Table).

Colville commenced this federal habeas action on June 10, 2021 (ECF No. 1).

## II.    STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[2]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its

---

[2] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Case No.:  3:21cv850/LAC/EMT

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003).  After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court.  *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state

proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the petitioner must show that he is in custody "in violation of the Constitution or laws and treaties of the United States," *see* 28 U.S.C. § 2254(a), and that the constitutional error resulted in "actual prejudice," meaning, the error "had a substantial and injurious effect or influence in determining the jury's verdict," *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted).

III.   COLVILLE'S CLAIMS

   A.   **Ground One: "Ineffective counsel for failing to convey plea."**

Colville alleges the following facts in support of Ground One:

It is legally impossible to initiate a legal prosecution without sufficient legal evidence, evincing an impossibility to plea. A felony conspiracy charge is apparent on the fact of the record and due to the prosecutor's refusal to certify charges in record [sic], it would be impossible to plea to something that doesn't exist.

(ECF No. 7 at 9) (verbatim). Colville asserts he exhausted this claim in the first Rule 3.850 proceeding and post-conviction appeal in First DCA Case No. 1D20-1776 (*id.* at 9–10).

The State construes Ground One as asserting the same claim of ineffective assistance of counsel (IAC) Colville asserted as Ground One of his first Rule 3.850 motion, i.e., that trial counsel failed to inform him of a fifteen-year plea offer made by the State before trial (*see* ECF No. 21 at 15). The State contends the circuit court adjudicated Ground One on the merits, and the adjudication is entitled to deference under § 2254(d) (*id.* at 15–19).

In Colville's reply, he asserts trial counsel's alleged failure to convey the plea offer was prejudicial because "without presentment it would be impossible to dishonor" (ECF No. 26 at 6).

### 1.    Clearly Established Federal Law

A defendant's Sixth Amendment right to counsel extends to the plea bargaining process. *See Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012) (citing

*Missouri v. Frye*, 566 U.S. 133, 145 (2012), and *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168. The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984) applies to claims that counsel was ineffective during the plea process. *See Lafler*, 566 U.S. at 162–63 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Frye*, 566 U.S. at 145–49 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 48 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

*Strickland*'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 688). The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was "reasonable considering all the circumstances." *Strickland*, 466 U.S. at 691. As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to

enter a plea on terms and conditions that may be favorable to the accused.  *See Frye*,

566 U.S. at 145.

*Strickland's* second prong requires a defendant to show "that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland*, 466 U.S. at 694.  In the context

of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's

constitutionally ineffective performance affected the outcome of the plea process."

*Hill*, 474 U.S. at 59.  To show prejudice from ineffective assistance of counsel where

a plea offer has lapsed or been rejected because of counsel's deficient performance,

defendants must demonstrate a reasonable probability they would have accepted the

earlier plea offer had they been afforded effective assistance of counsel.  *See Frye*,

566 U.S. at 147.  The defendant must also demonstrate a reasonable probability the

plea would have been entered "without the prosecution canceling it or the trial court

refusing to accept it, if they had the authority to exercise that discretion under state

law." *Id.*  To establish prejudice in this instance, it is necessary to show a reasonable

probability that the end result of the criminal process would have been more

favorable by reason of a plea to a lesser charge or a sentence of less prison time.  *Id.*

When a district court considers a habeas petition, the state court's findings of

historical facts in the course of evaluating an ineffectiveness claim are subject to the

presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

### 2.   Federal Review of State Court Decision

As Point I of Colville's amended Rule 3.850 motion, he argued defense counsel was ineffective for failing to convey a fifteen-year plea offer until the middle of trial (ECF No. 22-23 at 823–27).

The state circuit court held an evidentiary hearing on this claim. Colville testified that his trial counsel, Mr. Hamlin, notified him of a fifteen-year plea offer during the middle of trial (*see* ECF No. 22-30 at 2236–39). Colville testified he had

not had any other discussions about plea offers prior to that (*id.* at 2237).  Colville

testified Attorney Hamlin told him, "if they're offering you that much time, you—I

mean, you don't take it anyways or something like that" (*id.*).  Colville testified he

did not remember any other details about the plea offer, except "something to do

with probation and some time" (*id.* at 2238–39).  Colville testified there had been no

active plea negotiations prior to that (*id.* at 2238).  Colville's post-conviction counsel

asked Colville if he would have accepted the fifteen-year plea if he had known about

it prior to trial:

> Q [by Colville's post-conviction counsel].  Okay.  Now, the—
> the—the plea in that—this case, if you had known about the 15-year
> plea, is that something you would have—you would have entertained
> prior to trial?
>
> A.  Prior to trial—well, based on my knowledge, no, I don't think
> I can answer that question.
>
> Q.  It's—it's going to be critical to this Court's analysis as to
> whether or not the plea is something that you would have taken in order
> for the—for the Court to understand your mindset and whether or not
> there was prejudice in—in this.
>
> A.  Well, in Florida Rules of Criminal Procedure, it's 3.171, it—
> it states that under (c)(2)(B), that trial counsel supposed—he's
> supposed to pertain to all matters and—as well as any possible
> alternatives that may be open to the Defendant.  He had an obligation
> to secure a state of innocence.
>
> Q.  I understand these things.  My question here is, would you
> have taken that plea offer?  Because again, the Court needs to
> understand a—a multipart analysis here—

A. I think I'm going to take the Fifth on that.

Q. All right. I'm just going to ask one more time because it's—it's, again, it's critical to this Court's analysis that's been raised in the 3.850 motion—

A. I would have *considered* it.

(ECF No. 22-30 at 2239–40) (emphasis added).

Counsel for the State also questioned Colville about whether he would have accepted a fifteen-year plea offer:

Q. You did not want a plea offer in this case; isn't that correct?

A. When I—whether I wanted a plea offer or not is irrelevant—

Q. Yes or no, sir?

A. Ma'am, you can't tell me how to answer a question. I plead the Fifth.

Q. Okay. From the—from date of your arrest and all the way through your pretrial motions, you continue to assert your innocence, don't you?

A. I am innocent, ma'am.

Q. Yes or no?

A. I am innocent.

Q. Okay. So if you did not commit these crimes, why would you accept even a 15-year—a prison—why would you go to prison for 15 years?

A.  Because the judge failed to—he failed to recognize a legal requisite.

Q.  Sir.

A.  The State never had a right to impanel a jury.

Q.  Okay.  So you did—you were not interested in accepting a—any plea offer at all; isn't that correct?

A.  Well, I didn't commit a crime, so at first [sic].

. . . .

Q.  So you would not have accepted a 15-year prison offer for a crime you believe you did not commit; isn't that correct?

A.  Ma'am, I did not commit a crime.

Q.  Yes or no?

A.  I take the Fifth.

(ECF No. 22-30 at 2252–54).

Attorney Paul Hamlin testified he had been practicing law for twenty years (ECF No. 22-30 at 2268).  Hamlin testified he represented Colville on two cases, one that involved ten counts and the other involved two counts (*id.* at 2269).  Attorney Hamlin testified the State made a plea offer of a total of forty years to resolve the charges in both cases (*id.* at 2269).  Hamlin testified he communicated the offer to Colville, but Colville did not accept it (*id.*).  Hamlin testified that *any* plea offer was unacceptable to Colville because he maintained his innocence (*id.* at 2269–70).  Attorney Hamlin testified he conveys all plea offers to his clients

regardless of whether or not he believes that the client would accept it (*id.* at 2271).

Attorney Hamlin testified there was no fifteen-year offer made during trial or

otherwise (*id.* at 2270–71). Hamlin testified that if the State had made a fifteen-year

offer, he would have conveyed it to Colville and advised him to take it (*id.*).

Stephanie Pace, the assistant state attorney who prosecuted Colville, testified

at the evidentiary hearing. Ms. Pace testified she made a plea offer of a total of forty

years (ECF No. 22-30 at 2312–13). Ms. Pace testified she revoked the forty-year

plea offer when they picked the jury for Colville's trial (*id.* at 2313). Ms. Pace

testified she never made a plea offer of fifteen years (*id.* at 2313–14).

The state circuit adjudicated Colville's IAC claim as follows:

> On October 18, 2019, the limited evidentiary hearing was held
> [on Grounds I, VI, and VIII of Colville's First Amended Rule 3.850
> motion]. Defendant and two of his family members testified for the
> defense. Trial counsel, the prosecutor, and the fiancé of the victim's
> mother (Defendant's former wife) testified for the State. To the extent
> the witnesses' testimony conflicted, the Court finds that the testimony
> of the State's witnesses to be more credible than the testimony of the
> defense's witnesses.
>
> In the instant motion. Defendant raises 11 claims of ineffective
> assistance of counsel and one claim of cumulative error. To establish a
> prima facie case of ineffective assistance of counsel, a defendant must
> satisfy both prongs of *Strickland v. Washington*, 466 U.S. 688 (1994).
> First, the defendant must show that counsel's performance was
> deficient. *Id.* at 687. This requires showing that counsel's performance
> fell below a standard of reasonableness under prevailing professional
> norms. *Id.* at 687–90. Second, the defendant must show prejudice. *Id.*
> at 687. This requires showing that there is a reasonable probability that,

but for counsel's deficient performance, the result of the proceeding
would have been different. A reasonable probability is a probability
sufficient to undermine confidence in the outcome. *Id.* at 687, 694. If
the defendant fails to satisfy one prong, it is not necessary to consider
the other. *Id.* at 697: *see also Waterhouse v.* State. 792 So. 2d 1176,
1182 (Fla. 2001).

## GROUND I

In Ground I, Defendant claims that trial counsel was ineffective
for failing to convey a favorable plea offer to Defendant prior to trial.
He alleges that the State made a 15-year plea offer in this case, but trial
counsel never communicated the offer to him. He also alleges that he
would have accepted the offer if he had known about it and that there
is nothing in the record to indicate that the State would have withdrawn
the offer or that the Court would not have accepted the offer. He further
alleges that the offer clearly would have resulted in a lesser sentence
than the one he received after trial.

Based on the testimony of the prosecutor and trial counsel at the
limited evidentiary hearing, the Court finds that Defendant has not
demonstrated that trial counsel's performance was deficient or that he
was prejudiced. At the limited evidentiary hearing, the prosecutor
testified to the following. She made a 40-year plea offer in this case.
The offer would have been revoked at jury selection. She did not make
a 15-year plea offer at any point during this case. Trial counsel also
testified to the following. The prosecutor made a 40-year plea offer in
this case. He conveyed the offer to Defendant and Defendant did not
accept the offer. No offer was acceptable to Defendant: he maintained
his innocence the whole time. The prosecutor did not make a 15-year
plea offer during trial. The Court therefore concludes that Ground I
should be denied.

(ECF No. 22-24 at 7–8 (footnotes citing to evidentiary hearing transcript omitted)).

The First DCA affirmed the circuit court's decision per curiam without written

opinion. *Colville v. State*, 315 So. 3d 1191 (Fla. 1st DCA 2021) (Table).

Where, as here, the relevant state court decision on the merits does not come accompanied with the state court's reasons, the federal court should "look through" the unexplained decision to the last related state court decision that does provide a relevant rationale.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  The federal court should then presume that the unexplained decision adopted the same reasoning. *Id.*

One of the factual findings underlying the state court's adjudication of Ground One was its determination that the testimony of the prosecutor and Attorney Hamlin was credible.

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."  *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011); *see also Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing *Rice v. Collins*, 546 U.S. 333, 341–42 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")).  Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state

trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *see also Smith v. Kemp*, 715 F.2d 1459, 1465 (11th Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").

Questions of the credibility and demeanor of a witness are questions of fact. *See Consalvo*, 664 F.3d at 845 (citation omitted). "The deference compelled by the AEDPA requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations." *Nejad v. Attorney*, 830 F.3d 1280, 1292 (11th Cir. 2016) (internal quotation marks and citation omitted). Instead, "[i]n the absence of *clear and convincing evidence*, [courts] have no power on federal habeas review to revisit the state court's credibility determinations." *Id.* (emphasis in original) (citation omitted).

Colville has not presented clear and convincing evidence to overcome the state court's credibility finding. Therefore, this federal court defers to the state court's finding that the testimony of the prosecutor and Attorney Hamlin was credible. According to that testimony, the State made one plea offer of forty years; the offer was made prior to jury selection; Attorney Hamlin conveyed that offer to Colville; and Colville rejected it. The prosecutor withdrew the forty-year offer at jury selection. The prosecutor never made a plea offer of fifteen years. Based upon

these facts, the state court reasonably determined Colville failed to demonstrate deficient performance by Attorney Hamlin.

Moreover, Colville did not present any evidence there was a reasonable probability he would have *accepted* a plea offer. Colville testified only that he would have *considered* a fifteen-year offer. In the absence of such evidence, the state court reasonably rejected Colville's IAC claim on the prejudice prong. *See Frye*, 566 U.S. at 147 (holding that to show prejudice where a plea offer has lapsed or been rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability he would have accepted the earlier plea offer had he been afforded effective assistance of counsel).

Colville has not demonstrated that the state court's adjudication of the IAC claim presented in Ground One was based upon an unreasonable determination of the facts based upon the evidence presented in the Rule 3.850 proceeding. Nor has Colville shown that the state court's adjudication of his claim was contrary to or an unreasonable application of *Strickland*. Therefore, Colville is not entitled to federal habeas relief on the IAC claim presented in Ground One.

A final point with respect to Ground One bears mention, Colville argues in his reply that the State failed to respond to his arguments that the prosecutor refused

to "certify" the charges, and there was insufficient evidence to "validate" or support them (*see* ECF No. 26 at 6).

There is no federal constitutional requirement that a State charging authority "certify" criminal charges. Any argument that the prosecutor failed to comply with a state law certification requirement does not state a basis for federal habeas relief. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Moreover, the state court determined, at Colville's first appearance on October 12, 2014, there was probable cause to believe Colville committed the offenses set forth in the probable cause affidavit supporting the arrest warrant (*see* ECF No. 22-11 at 19–22 (arrest warrant and probable cause affidavit), 25 (first appearance paperwork)). Colville's arguments do not warrant federal habeas relief.

**B.    Ground Two:  "Ineffective counsel due to use of inadmissible hearsay without objection evincing [sic] collusion."**

Colville alleges the following facts in support of Ground Two:

> [The victim's] use of perjured testimony, where in divorce depositions testified under oath to no abuse occurring, an information of three charges, an information of twelve charges, and at trial to over forty-two, denied the preparation for a defense. These facts not only evince perjury but the filing of a fraudulent charging information which is why the prosecutor concealed the lead detective's testimony.

(ECF No. 7 at 11) (verbatim).[3]  Colville asserts he exhausted this claim in the first Rule 3.850 proceeding and post-conviction appeal in First DCA Case No. 1D20-1776 (*id.* at 11–12).

The State construes Ground Two as asserting the same IAC claim Colville asserted as Ground Two of his amended Rule 3.850 motion, i.e., trial counsel failed to object to testimony of the State's key witnesses as inadmissible hearsay (*see* ECF No. 21 at 19).  The State contends the circuit court adjudicated Ground Two on the merits, and the adjudication is entitled to deference under § 2254(d) (*id.* at 19–22).

### 1.    Clearly Established Federal Law

As noted *supra*, the standard for evaluating claims of IAC is set forth in *Strickland*.  To obtain relief under *Strickland*, the petitioner must show (1) deficient performance by counsel, and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.

The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was "reasonable considering all the circumstances," and reasonableness is measured "under prevailing professional norms."  *Strickland*, 466

---

[3] Colville's claim that the prosecutor concealed the lead detective's testimony is discussed in Ground Sixteen *infra*.

U.S. at 688.  "The petitioner's burden to prove, by a preponderance of the evidence,

that counsel's performance was unreasonable is a heavy one."  *Jones v. Campbell*,

436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Chandler v. United States*, 218 F.3d

1305, 1313 (11th Cir. 2000) (en banc).  "Even if many reasonable lawyers would not

have done as defense counsel did at trial, no relief can be granted on ineffectiveness

grounds unless it is shown that no reasonable lawyer, in the circumstances, would

have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Strategic or tactical decisions, made after a thorough investigation of the law

and facts, "are virtually unchallengeable" in an ineffective assistance claim.

*Strickland*, 466 U.S. at 690.  The Supreme Court has instructed that in reviewing

claims of ineffective assistance the court must be mindful of the following:

> Judicial scrutiny of counsel's performance must be highly
> deferential.  It is all too tempting for a defendant to second-guess
> counsel's assistance after conviction or adverse sentence, and it is all
> too easy for a court, examining counsel's defense after it has proved
> unsuccessful, to conclude that a particular act or omission of counsel
> was unreasonable.  A fair assessment of attorney performance requires
> that every effort be made to eliminate the distorting effects of hindsight,
> to reconstruct the circumstances of counsel's challenged conduct, and
> to evaluate the conduct from counsel's perspective at the time.  Because
> of the difficulties inherent in making the evaluation, a court must
> indulge a strong presumption that counsel's conduct falls within the
> wide range of reasonable professional assistance; that is, the defendant
> must overcome the presumption that, under the circumstances, the
> challenged action "might be considered sound trial strategy."  There are
> countless ways to provide effective assistance in any given case.  Even

the best criminal defense attorneys would not defend a particular client
in the same way.

*Strickland*, 466 U.S. at 689 (citations omitted).

To establish prejudice under *Strickland*, the petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jones v. GDCP Warden*, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694). The petitioner must show that the likelihood of a different result is substantial, not just conceivable. *Williamson v. Fla. Dep't of Corr.*, 805 F.3d 1009, 1016 (11th Cir. 2015) (citing *Richter*, 562 U.S. at 112).

### 2.    Federal Review of State Court Decision

In Point II of Colville's amended Rule 3.850 motion, he argued defense counsel was ineffective for failing to object to the improper introduction of hearsay testimony from "key witnesses," including the victim's cousin, the cousin's mother, and the victim's mother (ECF No. 22-23 at 829–31).

The state court adjudicated Colville's IAC claim as follows:

> In Ground II, Defendant claims that trial counsel was ineffective for failing to object to improper introduction of hearsay testimony from several of the State's key witnesses. He makes the following allegations in support of this claim. Trial counsel did not object when Defendant's niece (the victim's former step-cousin) testified that she was asked and made a promise to the victim (Defendant's former step-daughter [B.S.]) to not tell anyone about the alleged sexual interactions,

when Defendant's niece's mother testified that her daughter disclosed the information to her, or when the victim's mother (Defendant's former wife) testified that the victim admitted to the allegations when confronted with text messages between her and Defendant's niece. That testimony was hearsay and improperly bolstered the victim's testimony and credibility. If trial counsel had objected and prevented the testimony from coming in, then it is likely that the jury would have had doubt on the victim's testimony. This doubt would have led to a verdict being returned that would have been in Defendant's favor.

The Court finds that Defendant has not demonstrated that trial counsel's performance was deficient or that he was prejudiced. The testimony at issue was admissible as non-hearsay. The victim testified at trial and was subject to cross examination concerning her prior statements to her mother, Defendant's niece, and Defendant's niece's mother. Additionally, the victim's prior statements were not offered for the truth of the matter asserted, but rather to explain how the allegations were reported and to rebut the defense that the victim had recently fabricated the allegations. *See Peterson v. State*, 874 So. 2d l4, 16–17 (Fla. 4th DCA 2004). The Court therefore concludes that Ground Il should be denied.

(ECF No. 22-24 at 8–9).

Although an ineffective assistance of counsel claim is a federal constitutional claim which the court considers in light of the clearly established law of *Strickland*, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance—even when based on the failure of counsel to raise a state

law claim—is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted)[4]; *see also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law); *Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . .  It is

---

[4] *Alvord* was superseded by statute on other grounds as noted in *Hargrove v. Solomon*, 227 F. App'x 806 (11th Cir. 2007).

a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (alterations in original) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Here, as in *Alvord*, *Callahan*, and *Herring*, the state court has already answered the question of whether the testimony identified by Colville was objectionable as inadmissible hearsay—it was not. This court must defer to the state court's determination of state law. The failure by Colville's counsel to make a hearsay objection cannot be deemed deficient performance, and Colville cannot show he was prejudiced by counsel's failure to object, because the objection had no arguable basis for success. Therefore, the state court's adjudication of Colville's IAC claim was reasonable.

To the extent Colville argues counsel was ineffective for failure to object to the victim's testimony as "perjured," his claim is without merit. The proper means for exposing allegedly false testimony is impeachment, not objection on grounds of perjury. The transcript of Colville's trial demonstrates defense counsel impeached the victim's testimony regarding Colville's sexual abuse with her prior inconsistent statements during her deposition in a divorce proceeding:

> Q [by defense counsel]. Do you remember back in May during the divorce proceedings you had to testify at deposition; do you remember that?

A [by the victim].  Yes, sir.

*Q.  And you were asked then if anything had been happening to you, and you had a [sic] opportunity to say anything had been happening, didn't you?*

*A.  Yes, sir.*

*Q.  And you said nothing had been happening, didn't you?*

*A.  Yes, sir.*

Q.  And that was on—do you remember the date that was?

A.  No.

Q.  If I told you it was May 20th, 2014, would that ring a bell?

A.  I don't remember the day.

Q.  It was after Craig [Colville] and [redacted] had already split, right?

A.  Yes, sir.

. . . .

Q.  And at the end of the California proceedings, you were all united as a family again and continued ahead, right, with everything okay?

A.  Yes, sir.

Q.  And at that time one of the things that they asked you was if you—*if anything had ever happened to make you feel uncomfortable you would promise to tell*; is that correct?

*A.  Yes, sir.*

*Q.  And you were under oath when they asked you that, right?*

> *A.  Yes, sir.*

(ECF No. 22-4 at 4–5) (emphasis added).

Defense counsel used the proper method for exposing the victim's allegedly false testimony, i.e., impeaching her testimony with her prior inconsistent testimony. Defense counsel was not deficient for failing to object to the victim's testimony as perjured, and there is no reasonable probability the trial court would have sustained such an objection if counsel had made it.  Colville is not entitled to federal habeas relief on Ground Two.

### C.    Ground Three:  "Prosecutorial misconduct which goes down the Barron's law dictionary check-list it's so obvious."

Colville alleges the following facts in support of this claim:

> The prosecutor's solicitation of jurors willing to convict on testimony alone during voir dire evinces a felony conspiration charge and lack of sufficient legal evidence.  Trial transcripts reflect textbook prosecutorial misconduct, interjection of personal opinions and that reasonable doubt was legalese evincing criminal intent and an unlawful act.  The court was noticed.

(ECF No. 7 at 13) (verbatim).  In Colville's reply, he characterizes this claim as an IAC claim (ECF No. 26 at 9).  Colville states he exhausted this claim in his first Rule 3.850 proceeding and post-conviction appeal to the First DCA, Case No. 1D20-1776 (ECF No. 7 at 13–14).

The State asserts Ground Three is similar to the IAC claim Colville presented in the third claim of his amended Rule 3.850 motion, i.e., defense counsel was ineffective for failing to object to the prosecutor's closing argument wherein the prosecutor argued the case involved a credibility determination and stated she believed the victim was credible and told the truth, and the prosecutor argued Colville was guilty and indicated that the jury instruction on reasonable doubt was legalese (ECF No. 21 at 23).

### 1. Clearly Established Federal Law

The *Strickland* standard governs this claim.

### 2. Federal Review of State Court Decision

As Point III of Colville's amended Rule 3.850 motion, Colville argued the prosecutor made improper comments during closing arguments, and defense counsel was ineffective for failing to object to the comments as attempted burden-shifting, improper bolstering, and expressing an opinion as to Colville's guilt (ECF No. 22-23 at 831–34).

The state court adjudicated the claim as follows:

> In Ground III, Defendant claims that trial counsel was ineffective for failing to object to prosecutorial misconduct during closing argument. He makes the following allegations in support of this claim. During closing argument. the prosecutor made the following improper comments:  the defense presented no evidence as to why the victim

would make up the allegations; the jury instructions on reasonable doubt were legalese; the case was either the truth or an elaborate lie; the case rested upon whether the jury found the victim to be credible; if they believed the victim beyond a reasonable doubt, then they should convict Defendant; the victim told the truth and her testimony was credible; the State's case was the most credible evidence of the events that transpired; and that she believed Defendant was guilty.  Those comments shifted the burden of proof to Defendant and expressed the prosecutor's personal opinion as to the victim's credibility and Defendant's guilt.  It is evident that but for the prosecutor's improper comments, Defendant would have received a verdict in his favor.

The Court finds that Defendant has not demonstrated that trial counsel's performance was deficient or that he was prejudiced.  If trial counsel had objected to the comments at issue, then the Court would have sustained the objections.  Viewed in the context of the entire closing argument, the prosecutor correctly stated the law, did not shift the burden of proof and properly argued that the State's witnesses were credible and that Defendant was guilty based on the evidence presented.  The Court therefore concludes that Ground III should be denied.

(ECF No. 22-24 at 9–10 (footnotes citing trial transcript omitted)).  The First DCA affirmed the decision without comment.

A prosecutor may argue both facts in evidence and reasonable inferences from those facts.  *See Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted).  The prosecutor is not limited to a bare recitation of the facts; she may comment on the evidence and express the conclusions she contends the jury should draw from the evidence.  *See United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984).  When a prosecutor voices a personal opinion, but indicates that her belief is based on evidence in the record, the comment is not improper.  *See United States v.*

*Granville*, 716 F.2d 819, 822 (11th Cir. 1983).  A prosecutor may comment on the

uncontradicted or uncontroverted nature of the evidence and may point out that there

is an absence of evidence on a certain issue during closing argument to the jury.  *See*

*White v. State*, 377 So. 2d 1149 (Fla. 1980).  Additionally, prosecutorial comment

upon a general lack of defense evidence is permissible.  *See Smiley v. State*, 395 So.

2d 235 (Fla. 1st DCA 1981).

Attempts to bolster a witness by vouching for his or her credibility are

improper "if the jury could reasonably believe that the prosecutor indicated a

personal belief in the witness' credibility."  *See United States v. Eyster*, 948 F.2d

1196, 1206 (11th Cir. 1991) (citing *United States v. Sims*, 719 F.2d 375, 377 (11th

Cir. 1983)).  A jury could believe that the prosecutor personally believed in the

witness' credibility "if the prosecutor either places the prestige of the government

behind the witness, by making explicit personal assurances of the witness' veracity,

or the prosecutor implicitly vouches for the witness' veracity by indicating that

information not presented to the jury supports the testimony."  *Id.* (citation omitted).

In considering claims of prosecutorial misconduct based upon improper vouching,

the court must examine whether (1) the prosecutor explicitly personally assured the

witness' credibility, or (2) the prosecutor implicitly vouched for the witness'

credibility by implying that evidence not presented to the jury supports the witness'

testimony.  *See United States v. Castro*, 89 F.3d 1443, 1457 (11th Cir. 1996) (citing *Sims*, 719 F.2d at 377).

"[T]he prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991).  Furthermore, when the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not improper.  *See United States v. Granville*, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two government witnesses, only pointed to matters in evidence: the demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another) (citations omitted).

Finally, "the limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law." *Houston v. Estelle*, 569 F.2d 372, 380 (5th Cir. 1978).  "The relevant question is whether the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  Thus, to establish prosecutorial misconduct, a two-prong test must be satisfied:  (1) the prosecutor's

comments must have been improper; and (2) the comments must have rendered the trial fundamentally unfair.  *See Eyster*, 948 F.2d at 1206 (citations omitted); *Brooks v. Kemp*, 762 F.2d 1383, 1400 (11th Cir. 1985) (en banc), *vacated on other grounds*, 478 U.S. 1016 (1986), *reinstated*, 809 F.2d 700 (11th Cir. 1987).

Upon review of the evidence presented at Colville's trial and the entirety of the arguments of the prosecutor and defense counsel during closing arguments (as described by the State in its answer (*see* ECF No. 21 at 25–27) and verified by the trial transcript (*see* ECF No. 22-6 at 39–97)), the undersigned concludes that the state court reasonably determined that the prosecutor's comments did not constitute burden-shifting, improper vouching, or improper comment on Colville's guilt. Therefore, defense counsel was not deficient for failing to object on those grounds.

Moreover, even if Colville could demonstrate deficient performance, he could not show prejudice.  Before closing arguments, the trial court instructed jurors that statements by counsel during closing arguments did not constitute evidence (*see* ECF No. 22-6 at 38).  The prosecutor echoed that instruction, stating that closing arguments were not evidence and reminding the jury they should rely on the testimony and evidence presented at trial (*see id.* at 39–40).  Jurors are presumed to follow the jury instructions. *See United States v. Calderon*, 127 F.3 1314, 1334 (11th Cir. 1997).  Colville thus cannot show that the prosecutor's statements rendered his

trial "fundamentally unfair," *see Darden*, 477 U.S. at 183, or that there is a reasonable probability the verdicts would have been different had counsel objected, *see Strickland*, 466 U.S. at 694. Colville is not entitled to federal habeas relief on Ground Three. *See, e.g., Saintlot v. Sec'y, Fla. Dep't of Corr.*, No. 18-14172-F, 2019 WL 8359223, at *4 (11th Cir. Dec. 11, 2019) (denying certificate of appealability on petitioner's claim that counsel was ineffective for failing to object to prosecutor's comments during closing arguments; even if petitioner could demonstrate deficient performance, he could not show prejudice because trial court instructed jurors that statements made by counsel did not constitute evidence, and prosecutor echoed that instruction).

### D. Ground Four: "Ineffective counsel for failure to investigate and impeach State's key witnesses."

Colville alleges the following facts in support of this claim:

> Failure to investigate and allowing conviction on perjured testimony absent sufficient legal evidence not only evinces an attorney ignorant in law. It would allow any man to be subject to imprisonment, bribery, and extortion without just cause by willful acts of fraud destroying reasons. Nothing against reason is lawful.

(ECF No. 7 at 15) (verbatim). Colville states he exhausted this claim in his first Rule 3.850 proceeding and post-conviction appeal in First DCA Case No. 1D20-1776 (id. at 16–17).

The State asserts Ground Four is similar to the IAC claim Colville presented in the fourth claim of his amended Rule 3.850 motion, i.e., defense counsel was ineffective for failing to impeach the victim's mother with statements she allegedly made to coerce her ex-husband into allowing her to move to Florida with the victim (ECF No. 21 at 28).  The State contends the state court adjudicated Ground Four on the merits, and the adjudication is entitled to deference under § 2254(d) (*id.* at 28–33).

### 1.    Clearly Established Federal Law

The *Strickland* standard governs this claim.

### 2.    Federal Review of State Court Decision

As Point IV of Colville's amended Rule 3.850 motion, Colville argued defense counsel was ineffective for failing to properly impeach and attack the credibility of the victim and her mother (ECF No. 22-23 at 834–36).

The state court adjudicated the claim as follows:

> In Ground IV, Defendant claims that trial counsel was ineffective for failing to investigate and prepare for impeachment of the State's key witnesses.  He makes the following allegations in support of this claim. It was conveyed to trial counsel that while in California, the victim's mother threatened the victim's biological father that she would report him for alleged abuse if he did not let her move to Florida with the victim.  It was unreasonable for trial counsel not to investigate further and attempt to impeach the victim's mother.  During the divorce proceedings involving Defendant and the victim's mother, although there was mention of Defendant yelling, screaming, and pushing the

victim down a couple of steps, there was no mention of any actions by Defendant such as those alleged in this case. It was unreasonable for trial counsel not to attempt to impeach the victim when he was made aware that there was no mention of any alleged sexual abuse. Had trial counsel impeached those witnesses. the jury would have given less weight to both witnesses' testimony.

With respect to the victim's mother's testimony, the Court finds that Defendant has not demonstrated that trial counsel's performance was deficient or that he was prejudiced. Testimony concerning whether the victim's mother threatened the victim's biological father in California would not have been admissible at trial. *See Owen v. State*, 986 So. 2d 534, 546 (Fla. 2008) ("Trial counsel cannot be deemed ineffective for failing to present inadmissible evidence."). The testimony was not relevant to the victim's mother's testimony or to any issue in the case. *See Foster v. State*, 869 So. 2d 743, 745 (Fla. 2d DCA 2004). Defendant does not allege that the victim's mother threatened him in any way or that she made the abuse report in this case. The victim testified that she told Defendant's niece what was happening and asked her not to tell anyone. Defendant's niece testified that the victim shared information with her about Defendant and that she promised not to tell anyone. She also testified that she told her mother what the victim had told her. Her mother testified that her daughter told her about the information regarding the victim and she disclosed it to a counselor, who said that she had a legal obligation to report the information to law enforcement. The victim's mother testified that Defendant notified her of the abuse report.

With respect to the victim's testimony. the Court finds that this claim is refuted by the record. Contrary to Defendant's allegations, on cross examination, trial counsel elicited testimony from the victim that during her deposition in the divorce proceedings, she testified that nothing had been happening to her. The Court therefore concludes that Ground IV should be denied.

(ECF No. 22-24 at 10–11 (footnotes citing trial transcript omitted)). The First DCA

affirmed without written opinion.

As discussed *supra*, this court must defer to the state court's conclusion that testimony from the victim's mother concerning whether she threatened he victim's biological father during their pending divorce would not have been admissible at trial. *See Callahan*, 427 F.3d at 932; *Herring*, 397 F.3d at 1354–55. Deferring to this conclusion, the state court reasonably determined Colville had not demonstrated deficient performance or prejudice with respect to defense counsel's failure to further investigate and attempt to impeach the victim's mother.

With respect to defense counsel's alleged failure to impeach the victim with her prior deposition testimony, the state court reasonably rejected the claim as refuted by the trial transcript. As discussed in Ground Two *supra*, defense counsel elicited the victim's admission that during her deposition in the divorce proceeding, she testified that nothing had been happening to her (*see* ECF No. 22-4 at 4–5).

Colville has not demonstrated that the state court's adjudication of Ground Four was contrary to or an unreasonable application of *Strickland*. Therefore, Colville is not entitled to federal habeas relief on this claim.

### E. Ground Five: "Ineffective counsel for failure to move for mistrial and failing to object."

Colville alleges the following facts in support of this claim:

> The record lacking sufficient legal evidence of the forfeiture of a LEGAL estate prohibits the continuity of a LEGAL PROSECUTION evincing a mistrial and felony charge. The jury being told of allegations

> not in the information destroyed the ability to be impartial especially
> since anyone willing to convict on testimony alone would be deemed
> incompetent.  Since this statement proves the criminal nature of the
> court based on the fact it knew that it did not have sufficient legal
> evidence to initiate a legal prosecution.  Whereby causing an
> international contract breach.

(ECF No. 7 at 18) (verbatim).  Colville states he exhausted this claim by presenting it in the first Rule 3.850 proceeding and post-conviction appeal in First DCA Case No. 1D20-1776 (*id.*).

The State asserts Ground Five is similar to the IAC claim Colville presented in the fifth claim of his amended Rule 3.850 motion, i.e., defense counsel was ineffective for failing to move for a mistrial and failing to object when a witness named Rebecca Williams told the jury she had contacted Colville regarding the sexual abuse of someone other than the victim (ECF No. 21 at 33).  The State contends the circuit court adjudicated Ground Five on the merits, and the adjudication is entitled to deference under § 2254(d) (*id.* at 34–35).

### 1.    Clearly Established Federal Law

The *Strickland* standard governs this claim.

### 2.    Federal Review of State Court Decision

As Point V of Colville's amended Rule 3.850 motion, Colville argued defense counsel was ineffective for failing to object to the introduction of collateral crimes evidence through the testimony of Rebecca Williams, and failure to move for a

mistrial or properly impeach and attack the credibility of B.S. and her mother (ECF No. 22-23 at 837–39).

The state court adjudicated the claim as follows:

In Ground V, Defendant claims that trial counsel was ineffective for failing to object, request a curative instruction, and/or move for a mistrial when the State elicited testimony that introduced improper collateral crimes. He makes the following allegations in support of this claim. When the Child Protective Investigator (CPI) testified that she initially contacted Defendant regarding alleged abuse to his niece, trial counsel did not object or move for a mistrial. When the victim testified on cross examination that Defendant had once pushed her down the stairs, trial counsel also did not object, request a curative instruction, or move for a mistrial. But for trial counsel's failure to object to that testimony, it is likely the jury would not have been tainted by the evidence of collateral crimes and a verdict would have been returned in Defendant's favor.

With respect to the CPI's testimony, the Court finds that this claim is refuted by the record. When the prosecutor asked the CPI if she advised Defendant of the allegations regarding the victim when she initially contacted him, the CPI testified, "At that time it was not about [the victim]. It was actually about Miss—." Contrary to Defendant's allegations, the CPI did not finish her answer (that it was about his niece) because *trial counsel objected*. The Court sustained the objection, took a recess, and instructed the CPI that the jury could not know that there was an abuse allegation involving Defendant and his niece. The allegation was not discussed again, and it did not become a feature of the trial.

With respect to the victim's testimony, the Court finds that Defendant has not demonstrated that trial counsel's performance was deficient or that he was prejudiced. On cross examination, trial counsel elicited testimony from the victim that she had plenty of chances to report the abuse to someone, including a deposition during the divorce proceedings, but she stated that nothing had been happening to her. On

*redirect* examination, the *prosecutor* elicited testimony from the victim that she was not specifically asked during the deposition if she was being sexually abused, that she said that Defendant had pushed her down some stairs, and that she answered no when asked if anything else had happened.  If trial counsel had objected, the Court would have overruled the objection.  Trial counsel opened the door when he asked the victim about the deposition on cross examination.  *See Henderson v. State*, 135 So. 3d 472, 476–77 (Fla. 2d DCA 2014).  Additionally, the victim's allegation that Defendant had pushed her down some stairs was not mentioned again, and it did not become a feature of the trial.  Notably, in Ground IV, Defendant claimed that trial counsel was ineffective for not asking the victim about her testimony during the same deposition.  He cannot now claim that trial counsel was ineffective for asking the victim about that testimony.  The Court therefore concludes that Ground V should be denied.

(ECF No. 22-24 at 12–13 (footnotes citing trial transcript omitted)).  The First DCA affirmed without written opinion.

The trial transcript confirms the state court's finding that defense counsel timely objected before Ms. Williams, the child protective investigator, testified she contacted Colville regarding the sexual abuse of a different victim.  Ms. Williams testified she tried to locate Colville to speak with him and left a message with her name and phone number (ECF No. 22-4 at 42).  Ms. Williams stated Colville returned her call (*id.*).  Her testimony continued as follows:

> Q [by the prosecutor].  And when he called you, did you advise him of the allegations regarding [the victim]?
>
> A.  At that time it was not about [the victim].  It was actually about Miss—

        MR. HAMLIN:  Objection.

        MS. PACE:  Okay.  Let me—let me stop you.

        THE COURT:  Sustained.

(ECF No. 22-4 at 42).  The trial court immediately dismissed the jury (*id.* at 43).  the

following discussion ensued:

        THE COURT:  I wanted to stop at this point because there—it
was almost stated, it wasn't—

        MS. PACE:  Yes, sir.

        THE COURT:  —that there was an abuse allegation where the
defendant was the alleged perpetrator and the victim was not [the victim
in this case].  It was [a different victim].

        By agreement of the parties, that evidence is not admissible
before this jury.  The jury cannot know that.  It would be an automatic
mistrial, and then we'd start all over again with jury selection if that
were to happen.

        The reason I took a recess, I just want to make sure that that does
not come out before this jury.  I know it was kind of unintentional and
inadvertent, and you get to processing the information and things come
to your mind, but it's real important that the jury does not know that.
Okay?

        THE WITNESS:  Okay.

(ECF No. 22-4 at 43).  No further mention was made of another victim.

    The state court reasonably concluded that Colville failed to demonstrate

ineffective assistance with respect to the CPI's almost-mention of another victim.

Defense counsel successfully kept this damaging information from the jury. Counsel's requesting a curative instruction only would have drawn more attention to what the CPI was about to say, and evidence of another victim certainly did not become a feature of trial.

With respect to the victim's testimony regarding Colville's pushing her down stairs, the state court determined that an objection by defense counsel would have been overruled under state law because counsel opened the door. Deferring to this determination, Colville cannot show defense counsel's failure to object to the prosecutor's question on re-direct examination was deficient or prejudicial in the *Strickland* sense.

Colville has not demonstrated that the state court's adjudication of Ground Five was contrary to or an unreasonable application of *Strickland*. Therefore, he is not entitled to federal habeas relief on this claim.

### F.    Ground Six:  "Trial counsel ineffective for failing to object to tactical officers in exterior body armor across from jury."

Colville alleges the following facts in support of this claim:

> Excessive law enforcement presence was used to intimidate and prejudice the jury. The State conceded the court video and officers identities to subvert and obstruct justice during an evidentiary hearing and willfully gave false testimony to the court. The testimony of acting prosecutor STEPHANIE PACE and ERIC FINLEY evinces perjury which would could be proven by court video and law enforcement testimony, if not concealed by the court.

(ECF No. 7 at 19) (verbatim). Colville states he exhausted this claim by presenting it in the first Rule 3.850 proceeding and post-conviction appeal in First DCA Case No. 1D20-1776 (*id.*).

The State asserts Colville presented this IAC claim as Ground Six of his amended Rule 3.850 motion, i.e., defense counsel was ineffective for failing to object to tactical officers in exterior body armor sitting in the courtroom across from the jury (ECF No. 21 at 36). The State contends the circuit court adjudicated Ground Six on the merits, and the adjudication is entitled to deference under § 2254(d) (*id.* at 36–38).

### 1.    Clearly Established Federal Law

The *Strickland* standard governs this claim.

### 2.    Federal Review of State Court Decision

As Point VI of Colville's amended Rule 3.850 motion, Colville argued defense counsel was ineffective for failing to object to a "SWAT team dressed in riot gear" seated in the courtroom directly across from the jury during the entire trial (ECF No. 22-23 at 839–41).

This claim was the subject of the post-conviction evidentiary hearing. At the hearing, Colville described the law enforcement presence during trial as follows:

A [by Colville].  There was two—if—if the Court had a video of the—of the Court that you would see that there would be two corrections deputies looking like SWAT officers with—wearing black tactical gear and with—I think—I believe it said, Corrections, in big bold letter—yellow letters.  They were sitting directly across from the jury, and I believe there was a U.S. Marshal behind me as well as multiple law enforcement officers sitting with the Defense, talking to Ms. Pace, and the alleged victim's family throughout the—throughout the proceedings.

And during the course of this action, the—the—the Court had taken a break and the jury had actually seen me with this corrections deputy in tactical gear going to the restroom, which perceived me to be a threat, and the—the whole proceedings overall with just the extensive law enforcement, I looked like a threat to the community when in fact I was not.

Q [by Colville's counsel].   When you say, extensive law enforcement, just to be clear, because you said multiples and extensive, approximate number of—of law enforcement officers in the courtroom?

A.  I couldn't be exact, but I'd say around six or seven.  Some—some were just wearing badges, some were wearing plain clothes, some were wearing uniforms, others were wearing tactical gear.

Q.  Is this—so is this six or seven total or six or seven include—plus the—

A.  I know—

Q.  —the—the corrections and—

A.  Plus—

Q.  —Marshal—

A.   —plus the two and the—the court bailiff, and you would probably have—there were multiple.

. . . .

Q.   —so you estimate nine or ten then total law enforcement?

A.  I—like I said, I'm not—I—I estimated.

(ECF No. 22-30 at 2241–42).

Colville's uncle and aunt, Mr. and Mrs. Wallace, also testified at the evidentiary hearing.  Mr. Wallace testified there were "a lot" of law enforcement officers present during the trial (ECF No. 22-30 at 2258–59).  Mr. Wallace testified there were two guards "for Mr. Colville in tactical gear, full gear" and "at least ten" officers crowded around the defense table at all times (*id.* at 2259, 2261).  Mr. Wallace testified that in the courtroom "there had to be at least ten law enforcement officers crowded around the defense table at all times, standing up, moving about, looking at the jury" (*id.* at 2259).  Mr. Wallace testified he and his wife were "excused from the courtroom quite a bit" during trial (*id.*).

Mrs. Wallace testified she was present for the entire trial and was only out of the courtroom during recesses (ECF No. 22-30 at 2264).  She testified she saw at least three officers wearing green uniforms and "a lot" of officers wearing black gear that "looked like SWAT gear" (*id.* at 2264–65).

Attorney Paul Hamlin, Colville's trial counsel, testified there was not an unusual number of law enforcement officers in the courtroom (ECF No. 22-30 at

2272).  Hamlin testified he did not recall that any officers were wearing tactical gear (*id.*).  He testified, "That would be unusual.  I think I would remember it. . . . I don't remember any tactical gear." (*id.*).  Attorney Hamlin testified there were no officers directly behind him at the defense table, and no one, including officers, seated across from the jury (*id.* at 2272–73, 2900).  Hamlin testified Colville was in plain clothes and was not shackled in the presence of the jury (*id.* at 2273–74).  Attorney Hamlin testified that if there had been an overwhelming law enforcement presence in the courtroom, he would have objected to it as prejudicial to the defense (*id.* at 2274–75).

Ms. Pace, the prosecutor at Colville's trial, testified there were no officers in riot gear or tactical gear in the courtroom (ECF No. 22-24 at 2314).  She testified there was not an unusually large presence of uniformed officers (*id.*).  Ms. Pace testified a plain-clothes investigator from her office was near her table during trial, and court security officers were present (*id.* at 2314–15).  Ms. Pace testified uniformed officers were not hovering behind Colville during trial (*id.* at 2315).  Ms. Pace testified that on the last day of trial, there were five or less plain-clothes detectives from the sheriff's office in the gallery (*id.*).

Eric Finley, the fiancé of Colville's ex-wife, testified he was in the courtroom throughout the entire trial except when the courtroom was cleared during the

testimony of minors (ECF No. 22-31 at 4–5). Mr. Finley testified he was in the military and would recognize tactical gear (*id.* at 5–6). He testified he never saw law enforcement officers in riot gear or tactical gear at Colville's trial (*id.* at 5). Mr. Finley testified he would have noticed if there was an unusual number of law enforcement present (*id.* at 6). He testified there was not an unusual number at Colville's trial, and the officers who were present did not cause him to feel uncomfortable or intimidated (*id.*).

The state court adjudicated Ground Six as follows:

> In Ground VI, Defendant claims that trial counsel was ineffective for failing to object to the presence of SWAT team members in riot gear in the courtroom for the duration of the trial. He alleges that the presence of SWAT team members in riot gear was an unreasonable and excessive show of force. He also alleges that their presence likely exacerbated the jury's negative impression of him and the presumption of guilt. He further alleges that but for their presence, he would not have been prejudiced.

> Based on the testimony of trial counsel and the prosecutor at the limited evidentiary hearing, the Court finds that Defendant has not demonstrated that trial counsel's performance was deficient or that he was prejudiced. At the limited evidentiary hearing, trial counsel testified to the following. There was not an unusual number of law enforcement officers in the courtroom during the trial. If there had been an overwhelming law enforcement presence, then he would have objected. He did not recall seeing any officers in riot or tactical gear. He did not think there were officers sitting directly behind the defense table. The prosecutor also testified to the following. She was present in the courtroom for the entire trial, and she did not see any law enforcement officers in riot or tactical gear. There was not an unusually large presence of uniformed armed officers. There were not any

uniformed officers hovering behind Defendant during the trial. The Court therefore concludes that Ground VI should be denied.

(ECF No. 22-24 at 13–14 (footnotes citing evidentiary hearing transcript omitted)). The First DCA affirmed without written opinion.

Colville has not rebutted the state court's factual findings, including its credibility determinations, by clear and convincing evidence. Based upon those facts and the testimony of Attorney Hamlin, Ms. Pace, and Mr. Finley, the state court reasonably concluded Colville failed to satisfy *Strickland*'s deficient performance and prejudice prongs with respect to defense counsel's failure to object to the law enforcement presence during trial. Colville is not entitled to federal habeas relief on Ground Six.

**G.    Ground Seven:  "Ineffective counsel for failure to file motion for new trial."**

Colville alleges the following facts in support of this claim:

A motion for new trial should have been filed based on the fact that the validation of bonds and certificate of indebtedness are noticeably void. Prosecutorial misconduct and blatant statements by the prosecutor such as that reasonable doubt is legalese, this case is either all truth or all lies, that the definitions in the charging information are not legal definitions clearly evince criminal acts in opposition to law. The jury was told over forty-two false accusations not in the information that Colville had never heard denying him the ability to prepare a defense.

(ECF No. 7 at 20) (verbatim).  Colville states he exhausted this claim by presenting it in the first Rule 3.850 proceeding and post-conviction appeal in First DCA Case No. 1D20-1776 (*id.*).

The State asserts Colville presented this IAC claim as Ground Seven of his amended Rule 3.850 motion, i.e., defense counsel was ineffective for failing to file a motion for new trial due to prosecutorial misconduct and forty-two false accusations (ECF No. 21 at 39).  The State contends the allegations of prosecutorial misconduct (i.e., allegedly improper comments during closing arguments) were addressed in Ground Three *supra* (*id.*).  With respect to the motion for new trial, the State contends the circuit court adjudicated this IAC claim on the merits, and the adjudication is entitled to deference under § 2254(d) (*id.* at 39–43).

### 1.    Clearly Established Federal Law

The *Strickland* standard governs this claim.

### 2.    Federal Review of State Court Decision

As Point VII of Colville's amended Rule 3.850 motion, Colville argued defense counsel was ineffective for failing to file a motion for new trial (ECF No. 22-23 at 841–43).  Colville alleged the victim testified to numerous incidents of abuse in two residences, but there was testimony that at least eight people were living in the homes at that time (*id.* at 842).  Colville alleged, "[a]s argued by the trial

counsel in the closing, it is difficult to imagine that with the amount of alleged times [the victim] was abused, with all those individuals living in the homes, that no one saw what was happening." (*id.* at 842–43).  Colville argued defense counsel was deficient for failing to file a motion for a new trial requesting judicial review of the sufficiency and weight of the evidence (*id.* at 843).  Colville argued if the trial court had reevaluated the evidence, the court would have granted a new trial, which would have concluded with a verdict "more in line with the evidence" and more favorable to him (*id.*).

The state court adjudicated Ground Seven as follows:

In Ground VII, Defendant claims that trial counsel was ineffective for failing to file a motion for new trial.  He alleges that the weight of the evidence should not have resulted in a guilty verdict against him.  He also alleges that if the Court had reevaluated the weight of the evidence, then it surely would have granted a new trial.

The Court finds that Defendant has not demonstrated that trial counsel's performance was deficient or that he was prejudiced.  If trial counsel had filed a motion for new trial, then the Court would have denied the motion.  At sentencing, the trial judge made several statements indicating that he found the victim's testimony to be very credible, that there was no question in his mind about what happened, and that the jury reached the same conclusion as he did.  Based on those statements, there is no reasonable probability that the Court would have found that the jury's verdict was contrary to the weight of the evidence. *See* Fla. R. Crim. P. 3.600(a)(2): *cf. Lamb v State*, 124 So. 3d 953, 956–57 (Fla. 2d DCA 2013).  The Court therefore concludes that Ground VII should be denied.

(ECF No. 22-24 at 14 (footnotes citing sentencing hearing transcript omitted)).  The First DCA affirmed without written opinion.

The state court record includes the transcript of Colville's sentencing (ECF No. 22-24 at 315–49).  After the parties presented evidence and made arguments in support of their positions on the issue of Colville's sentences, Colville addressed the court (for a second time), and the court made the following statements:

> THE DEFENDANT:  I would just like to make one more statement, Your Honor.  If you check the victim's—alleged victim in this case's Facebook status, she clearly moved out of her mother's house as soon as humanly possible.  She's with an older man—living with an older man right now that she's pregnant—currently pregnant with, and—and she's bragging about having taken showers and doing this, that, and the other, so clearly she's been coached in this matter.

> THE COURT:  Either that or she's been warped, and I don't know which one, and I'm not going to draw any conclusions from that.

> What I do know is I believed her testimony unequivocally at the trial.  It was some of the most gut-wrenching, heartfelt testimony that I've seen.  I don't think there's any way the victim in this case [redaction] was making these allegations up.  I think—I believe every bit of it.  I think it all happened.  I have no question in my mind about it.
> . . . .
> First of all, this is the—the father of her brothers, of her three brothers.  She's going to go accuse the father of her three brothers, who she's part of a family unit with, she's just going to out and out make stuff up about him, and the detail she provided, go through the ordeal of depositions, having to come into court and have to testify in front of a group of strangers, I don't think she made it up.  I think—I think she was truthful, and I believed every word of it when I listened to her.

It was corroborated.  What really made it strong, and what I think was very convincing to the jury is it was corroborated by the defendant's niece, [redaction].  There was some testimony that the defendant was out driving with [redaction] and her—and his niece, [redaction].  Now, this is his own blood niece. They were driving around, the defendant asked [redaction] to take her top off, complete top off, bra and everything, and run around the car for his own personal excitement with his [redaction] sitting in the car.  His [redaction] came and testified against him.  I don't know of any way that [redaction] is not telling the truth, and I think this was critical for the jury.  Because if you believe this incident happened, you tended to believe all of it occurred. [redaction] is the defendant's [redaction].

. . . .

It was suggested that there was a child support matter going on. The—the defendant did not owe [redaction] child support.  It doesn't— it's not logical to me that that could be a possible motive for [redaction] to fabricate this.  Both girls came across extremely believable.  I think that's why the jury reached the verdict.

. . . .

The reality is . . . the evidence that was presented at trial was very compelling, and it was very persuasive, and there is no—there was no question in my mind at the conclusion of the trial what happened.  And apparently, the jury reached the same conclusion that I did.

(ECF No. 22-24 at 340–44).

Rule 3.600 of the Florida Rules of Criminal Procedure provides, in relevant part, that the court must grant a new trial if the verdict is contrary to law or the weight of the evidence.  *See* Fla. R. Crim. P. 3.600(a)(2).  The post-conviction court already concluded that a motion for new trial would not have been granted under state law, and this conclusion is supported by the court's comments during sentencing.

Deferring to this conclusion, defense counsel cannot be deemed ineffective for failing to make a motion for new trial.

Colville has not demonstrated that the state court's adjudication of Ground Seven was contrary to or an unreasonable application of *Strickland*, therefore, he is not entitled to federal habeas relief on Ground Seven.

### H.   Ground Eight: "Ineffective counsel for failing to disqualify judge."

Colville alleges the following facts in support of this claim:

> On or around August 11, 2015, a hearing was conducted where the judge and prosecution admitted to ex-parte communication in record. Where trial counsel failed to disqualify the judge after the communication and argument that the judge's daughter was a rape victim. The sentencing phase was unreliable where Colville was sentenced to 330 years for non-existent crimes, which is a de facto life sentence by a jury of six mentally incompetents for non-capital offenses. As the State refuses to respond that said sentence is unlawful or produce a valid certificate of indebtedness authorizing such insanity, it clearly evinces fraud on the court and a criminal act by the acting judge. Law cannot demand an impossibility and nothing against reason is lawful. Colville received 315 more years for refusing to accept a plea.

(ECF No. 7 at 21) (verbatim).[5] Colville states he exhausted this claim by presenting it in the first Rule 3.850 proceeding and post-conviction appeal in First DCA Case No. 1D20-1776 (*id.*).

---

[5] Colville's claim that his sentence was unconstitutionally excessive is discussed in Ground Fourteen *infra*.

The State asserts Colville presented this IAC claim as Ground Eight of his amended Rule 3.850 motion, i.e., defense counsel was ineffective for failing to move to disqualify the trial judge due to the judge's conversation with the State regarding phone calls in which Colville speculated as to whether the judge could be fair and impartial if his daughter was raped and something happened to the prosecutor's children before sentencing (ECF No. 21 at 44). The State contends the circuit court adjudicated this IAC claim on the merits, and the adjudication is entitled to deference under § 2254(d) (*id.* at 44–47).

### 1.    Clearly Established Federal Law

The *Strickland* standard governs this claim.

### 2.    Federal Review of State Court Decision

As Point VIII of Colville's amended Rule 3.850 motion, Colville argued defense counsel was ineffective for failing to file a motion to disqualify the judge when a basis for disqualification was discovered (ECF No. 22-23 at 843–47). Colville alleged after trial but prior to sentencing, the State obtained a recording of one of Colville's phone calls from the jail in which Colville made a comment referencing the judge's daughter as a rape victim (*id.* at 844). Colville asserted the recording was discussed at a post-trial, pre-sentencing hearing on August 11, 2015, during which the judge mentioned to defense counsel that he would entertain a

motion for recusal (*id.* at 846). Colville asserted there was no reasonable explanation for defense counsel's failure to file a motion to disqualify the judge, and Colville would have received a less harsh sentence if defense counsel had sought disqualification (*id.* at 846–47).

The state court record includes a transcript of the hearing held August 11, 2015 (ECF No. 22-30 at 2218–24). Bryan Hamlin, Paul Hamlin's son, appeared on Colville's behalf (*id.*). During the hearing, the trial judge disclosed the following:

> Let me disclose something on the record that occurred that I think both parties have a right to know. And I'm telling you this for informational purposes, Mr. Hamlin. And I'll let you make a decision as to how you want to proceed with it. A day or two after the verdict, I can't remember the exact day, we received a phone call from the State Attorney's Office. Apparently, Mr. [Colville] had been making phone calls from the jail, which as everybody knows, they are recorded.
> . . . .
> I was played a clip of a tape. It didn't last very long. And I'm going to paraphrase it. And I'm not exactly sure that I'm remembering it correctly, but I'm telling you the gist of it. What it said was, If Judge Miller's daughter were to be raped between now and the sentencing, that means he wouldn't be fair and impartial. And then something to the effect of, [i]f something could happen to Stephanie Pace's children also.
>
> THE DEFENDANT: No, that's not correct.
>
> THE COURT: When I listened to it—what I basically thought was this is a disgruntled defendant who had just been convicted and apparently the call had been made the day of trial. And, honestly, it doesn't affect me one way or the other. But what I want to do is—I think the Defense has a right to know what I heard and what I listened

to, and then you can make a decision as to whether or not you want to file a motion for recusal or what.

So the clip of the tape that I heard, I want the Defense to hear. And probably the best thing to do at some point is to play it on the record so that it's in the record and that that's clear, okay? And all I'm doing at this point is disclosing that to the Defense because, like I say, you have a right to know anything that I've heard. And you have a right to know what anything [sic] that was said.

I don't think it honestly affects me. But that's a decision that the Defense can make. If you want to file the appropriate motion I'll certainly . . .

MR. HAMLIN: Yes, Your Honor.

THE COURT: Certainly consider it, okay?

. . . .

THE DEFENDANT: Your Honor, may—speak?

THE COURT: You might not want to.

THE DEFENDANT: I would like to, sir.

THE COURT: Because you have a Fifth Amendment right to remain silent, I don't want you to say anything that's going to incriminate you.

THE DEFENDANT: I was just stating that that fact and State's evidence and I would like that entire conversation played, if possible.

THE COURT: Okay. Yeah, to lend context to it, absolutely.

THE DEFENDANT: Yes, sir.

THE COURT: If that's what you want to do, that's your prerogative.

(ECF No. 22-30 at 2220–21).

At the post-conviction evidentiary hearing, Colville testified that the statement he made during the phone call was "how could he [the judge] be nonpartisan or unbiased if his daughter is in fact a rape victim" (ECF No. 22-30 at 2249–50).

Attorney Paul Hamlin testified he and his son Bryan would have conferred about what occurred during the hearing on August 11, 2015 (ECF No. 22-30 at 2309).  Hamlin testified if the judge had indicated any animosity towards Colville or indicated he could not be fair, it would been appropriate to seek disqualification (*id.* at 2280).  Hamlin testified that based upon his discussion with Bryan, he did not believe there were any grounds for seeking disqualification of the judge, and if he believed there were such grounds, he would have filed a motion to disqualify (*id.* at 2309).  Hamlin testified, "knowing Judge Miller and . . . knowing what was allegedly said, I didn't consider it to be a . . . concern for [sic] being prejudicial against Mr. Colville" (*id.* at 2275).  Attorney Hamlin testified a motion to disqualify the judge would have been frivolous (*id.* at  2276–77).

Ms. Pace, the prosecutor, testified that if she believed the trial judge was unable to be fair at sentencing, she would have filed a motion for disqualification (ECF No. 22-30 at 2318).  Ms. Pace testified that after the discourse about the phone

call, she did not believe that the judge was biased or unfair and had no concerns

about the judge's ability to remain fair (*id.*).

The state court adjudicated Ground Seven as follows:

> In Ground VIII, Defendant claims that trial counsel was ineffective for failing to file a motion to disqualify the trial judge. He makes the following allegations in support of this claim. Before the sentencing hearing was held, the State obtained a recording of a jail call where Defendant "made a comment referencing the fact that the [trial j]udge's daughter had been a victim of rape." Trial counsel should have filed a motion to disqualify immediately after the trial judge was notified of the jail call. At the conclusion of the sentencing hearing, it was evident that the trial judge was frustrated with Defendant. The prejudice of trial counsel's failure to file a motion to disqualify is evident in the biased sentence handed down by the trial judge. A 330-year sentence for these offenses shocks the conscience and is a de facto life sentence. But for the judge hearing the jail call, the sentence imposed would have been much different.

> The Court finds that Defendant has not demonstrated that trial counsel's performance was deficient or that he was prejudiced. If trial counsel had filed a motion to disqualify, the Court would have denied the motion. Defendant does not allege facts that would have created in a reasonably prudent person a well-founded fear of not receiving a fair and impartial sentencing hearing. The jail call was addressed with both parties at a hearing held on August 11, 2015. The trial judge stated that it sounded like a disgruntled defendant who had just been convicted and it did not affect him one way or the other. Additionally, even if the trial judge appeared to be frustrated with Defendant at the conclusion of the sentencing hearing after imposing sentence, expressions of frustration do not establish bias or partiality. *See Liteky v. United States*, 510 U.S. 540, 555–56 (1994) (holding that expressions of impatience, dissatisfaction, annoyance. and even anger do not establish bias or partiality).

Additionally, at the limited evidentiary hearing, trial counsel testified to the following. Knowing the facts and what was allegedly said, he did not consider the jail call to be a concern for being prejudicial against Defendant. He did not recall Defendant asking him to file a motion to disqualify. If Defendant had asked him to file the motion, then he does not think he would have done so in this case because such a motion would have been frivolous. The prosecutor also testified to the following. The trial judge was an experienced attorney and judge; he would have recused himself if he felt threatened or if he was in a situation where he could no longer be fair. If the prosecutor had felt that the trial judge was unable to be fair in sentencing, then she would have filed a motion to disqualify. She did not feel that the trial judge was biased or unfair. She had no concerns about the trial judge's ability to remain fair. The Court therefore concludes that Ground VII should be denied.

(ECF No. 22-24 at 15–16 (footnotes citing sentencing hearing and evidentiary hearing transcripts omitted)). The First DCA affirmed without written opinion.

Under Florida law, a judge determining the legal sufficiency of a motion for disqualification must determine "if the fact alleged, which must be taken as true, would prompt a reasonably prudent person to fear that he could not receive a fair and impartial [proceeding]." *Pierce v. State*, 873 So. 2d 618–19 (Fla. 2d DCA 2004). Here, the state court determined the facts in Colville's case failed to satisfy this state law standard. Considering the evidentiary hearing testimony and the trial judge's comments at the hearing held August 11, 2015, and at the sentencing hearing, the state court reasonably determined Colville failed to demonstrate defense counsel's failure to file a motion to disqualify was not deficient. The state court also

reasonably determined Colville failed to establish prejudice. Colville is not entitled

to federal habeas relief on Ground Eight.

I.    **Ground Nine: "Ineffective counsel for failing to request testimony readback when jury requested it."**

Colville alleges the following facts in support of this claim:

> Failing to give mentally incompetent jurors whom are willing to convict on testimony alone a readback is extremely prejudicial and establishes proof of memory problems. These jurors openly admitted that the State not need prove its case that they would convict anyway. Such idiocy not only destroys biblical standards but is an outright mockery of the law. A jury not authorized by law cannot give a competent opinion, nor can a jury form a competent opinion that cannot remember the facts. Especially, when told that they charged Colville with familial or custodial authority (a legal definition) but that they would not hear a legal definition (See Exhibit A) evincing a fraudulent charge. Thereby, proving a malicious prosecution and unlawful act.

(ECF No. 7 at 22) (verbatim).[6]    Colville states he exhausted Ground Nine by

presenting it in the first Rule 3.850 proceeding and post-conviction appeal in First

DCA Case No. 1D20-1776 (*id.*).

The State asserts Colville presented this IAC claim as Ground Nine of his

amended Rule 3.850 motion, i.e., defense counsel was ineffective for failing to

request a testimony readback when the jury requested it (ECF No. 21 at 48). The

---

[6] The exhibit referenced by Colville is an excerpt of the prosecutor's closing argument in which she stated, "Now, you are not going to hear a legal definition of familiar or custodial authority; but I would submit to you that you can use your common sense in defining that." (*see* ECF No. 7-1 at 5). The court will address this claim in Ground Seventeen *infra*.

State contends the circuit court adjudicated this IAC claim on the merits, and the adjudication is entitled to deference under § 2254(d) (*id.* at 48–50).

###    1.    Clearly Established Federal Law

The *Strickland* standard governs this claim.

###    2.    Federal Review of State Court Decision

As Point IX of Colville's amended Rule 3.850 motion, Colville argued defense counsel was ineffective for failing to request a testimony readback when the jury requested trial transcripts during deliberations (ECF No. 22-23 at 847–49).

The state court adjudicated Ground Nine as follows:

> In Ground IX, Defendant claims that trial counsel was ineffective for failing to request testimony readback when the jury requested trial transcripts during deliberations. He makes the following allegations in support of this claim. When the jury asked if they could have transcripts in the deliberation room, trial counsel should have requested that the Court inquire as to exactly what part of the testimony the jury wanted read back and then determine whether that testimony would he read back. It is likely that upon hearing the testimony a second time. the jury would have been swayed in issuing a verdict in Defendant's favor.

> The Court finds that Defendant has not demonstrated that trial counsel's performance was deficient or that he was prejudiced. During deliberations, the jury sent the Court a note asking, "Can we see, read, have transcripts here in the deliberation room?" The Court brought the jury back into the courtroom and properly instructed them that transcripts were not available. *See* Fla. R. Crim. P. 3.410(b)(1). The Court also properly instructed the jury that they could request to have specific testimony read or played back. *See* Fla. R. Crim. P. 3.410(b)(2) & (3); *Hazuri v. State*, 91 So. 3d 836, 845–46 (Fla. 2012). The Court

then directed the jury to return to the jury room, discuss their request further, and let the Court know if they needed to communicate further. The jury did not request to have any testimony read or played back. The Court therefore concludes that Ground IX should be denied.

(ECF No. 22-24 at 16–17 (footnotes citing trial transcript omitted)).  The First DCA affirmed without written opinion.

Rule 3.410(b) of the Florida Rules of Criminal Procedure provides that when a jury requests to have transcripts of trial testimony, "[t]he trial judge must deny the requests for transcripts," "[t]he trial judge must instruct jurors that they can, however, request to have any testimony read or played back, which may or may not be granted at the court's discretion."  When a general request for transcripts is made, "the trial judge must instruct jurors that, if they request a read or play back, they must specify the particular trial testimony they wish to have read or played back." Fla. R. Crim. P. 3.410.

As the state court found, during deliberations, the jury requested trial transcripts for the deliberation room (ECF No. 22-6 at 124). The trial court brought the jury back into the courtroom and stated, "[t]ranscripts are not available," but "you may request to have testimony read or played back to you" (*id.*).  The trial court told the jury to discuss the request further, and then they could come back and request to have testimony read/played back, if they could not rely upon their collective memory (*id.*).  The trial court also stated that if they decided to make such

a request, it would have to be as specific as possible so that the trial court could determine whether to grant the request (*id.*). The jury left the courtroom and did not return from the deliberation room until a verdict was reached (*id.* at 124–25).

Deferring to the state court's determination that the trial judge handled the jury's inquiry in accordance with the state procedural rule, Colville cannot demonstrate deficient performance or prejudice with respect to defense counsel's failure to request a readback. Colville is not entitled to federal habeas relief on Ground Nine.

### J.    Ground Ten:    "Ineffective counsel for failing to object to sequestering jury until forced verdict was reached."

Colville alleges the following facts in support of this claim:

> A coerced verdict in a criminal matter deprives the accused of a fair trial and is contrary to the Florida Constitution. The juries false verdict is proven by the Writ of Attaint filed in Case Number 2014-CF-1376 and the multiple unrefuted affidavits. The record itself is evidence of a statute limitation violation, felony conspiracy charge and fraud. A rogue jury forced to make uneducated decisions is a mockery of reason. Since nothing against reason is lawful. Clearly, the courts impannelment of a jury without sufficient legal evidence, lying to them about definitions and sequestering them produced an unlawful criminal act. The sequestered jury was in opposition to law.

(ECF No. 7 at 23) (verbatim). Colville states he exhausted this claim by presenting it in the first Rule 3.850 proceeding and post-conviction appeal in First DCA Case No. 1D20-1776 (*id.*).

The State asserts Colville presented this IAC claim as Ground Ten of his amended Rule 3.850 motion, i.e., defense counsel was ineffective for failing to object to sequestering the jury until a forced verdict was reached (ECF No. 21 at 51). The State contends the circuit court adjudicated this IAC claim on the merits, and the adjudication is entitled to deference under § 2254(d) (*id.* at 51–53).

### 1.    Clearly Established Federal Law

The *Strickland* standard governs this claim.

### 2.    Federal Review of State Court Decision

As Point X of Colville's amended Rule 3.850 motion, Colville argued defense counsel was ineffective for failing to object to the trial court's "requirement to sequester the jury until a verdict was reached" (ECF No. 22-23 at 849–50). Colville characterized the following statement by the court, made at the beginning of trial following jury selection, as a "sequestration requirement" designed to coerce the jury into reaching a verdict:

> THE COURT:  We're going to do Wednesday and Thursday. We'll start at 9 o'clock on Wednesday and go probably until 4:30 or 5, unless it just seems like we're at the very end of it and can get the case to the jury within a reasonable time.  Otherwise, we'll finish it on Thursday.

(ECF No. 22-23 at 849–50).

The state court adjudicated Ground Ten as follows:

In Ground X, Defendant claims that trial counsel was ineffective for failing to object to the Court's requirement that the jury be sequestered until a verdict was reached. He makes the following allegations in support of this claim. At the beginning of the trial the Court told the jury that they would be finished with the trial by Thursday. The Court's requirement that the jury be sequestered until a verdict was reached was improper, coercive, and effectively rushed the jury in reaching a verdict. If the jury had not been subjected to such a requirement, then it is likely that the deliberations would have run into Friday. The jury would not have felt rushed, could have analyzed the evidence more closely, and would have returned a verdict in Defendant's favor.

The Court finds that Defendant has not demonstrated that trial counsel's performance was deficient or that he was prejudiced. Contrary to Defendant's allegations, the Court did not require the jury to be sequestered until a verdict was reached. Before jury selection, the Court asked the parties if they were still ready to go on Wednesday and Thursday and later reiterated that they were going to do Wednesday and Thursday. The jury panel was not present. At the beginning of jury selection, the Court advised the jury panel that a two-day trial on Wednesday and Thursday was *anticipated*. On the second day of trial, the Court did not instruct the jury that the verdict had to be reached that day or that they would be sequestered overnight if they did not reach a verdict that day. *Cf. Webb v. State*. 519 So. 2d 748. 749 (Fla. 4th DCA 1988). The jury left the courtroom to deliberate at 3:00 p.m. and returned with a verdict at 7:55 p.m. The Court therefore concludes that Ground X should be denied.

(ECF No. 22-24 at 17–18 (footnotes citing trial transcript omitted)). The First DCA affirmed without written opinion.

The trial transcript confirms that the comment identified by Colville as a "sequestration requirement" was made prior to jury selection and outside the presence of any prospective jurors (ECF No. 22-1 at 16–17, 22). When the

prospective jurors entered the courtroom, the judge introduced himself and informed the jury that the trial would begin on Wednesday and was *anticipated* to be a two-day trial (*id.* at 22). At the conclusion of jury selection, the court reiterated this (ECF No. 22-2 at 25).

When the court excused the jury to begin deliberations, the court made no mention of sequestration or timing and simply stated, "Whenever you reach a verdict or have a question, if you'll knock on the door and let court security know, they will come and get me" (*see* ECF No. 22-6 at 116–20). The jury began deliberating at 3:00 p.m. (*see id.* at 120). During deliberations, the jury requested a "white board," which was provided (*id.* at 120–21). The jury subsequently inquired about transcripts, as discussed in Ground Nine *supra* (*id.* at 121–24). The jury reached a verdict at 7:55 p.m. (*id.* at 126).

Based on this record, the state court reasonably applied *Strickland* in determining Colville failed to demonstrate deficient performance or prejudice with respect to defense counsel's failure to object to the trial court's alleged sequestration requirement. Colville is not entitled to federal habeas relief on Ground Ten.

### K.    Ground Eleven:  "Trial counsel was ineffective for failing to file a bill of particulars."

Colville alleges the following facts in support of this claim:

Trial counsel's failure to file a bill of particulars evinces the impossibility to prepare a defense, destroying the illusion of a fair trial. The charges were never certified in record therefore it would be impossible to know what one would be pleading to. The original information was (3) charges, second (12) charges and at trial over (42) were testified to of which the defendant never heard. This not only prejudiced the jury. The defendant was denied the opportunity to prepare a defense. The information was so vague a date and time were never established on the false evidence rendering it impossible to defend. Trial counsel's malpractice destroyed Colville's right to prepare a defense. Especially when trial testimony was outside of information charged.

(ECF No. 7 at 24) (verbatim). Colville states he exhausted this claim by presenting it in the first Rule 3.850 proceeding and post-conviction appeal in First DCA Case No. 1D20-1776 (*id.*).

The State asserts Colville presented this IAC claim as Ground Eleven of his amended Rule 3.850 motion, i.e., defense counsel was ineffective for failing to file a motion for bill of particulars (ECF No. 21 at 54). The State contends the circuit court adjudicated this IAC claim on the merits, and the adjudication is entitled to deference under § 2254(d) (*id.* at 54–56).

### 1.    Clearly Established Federal Law

The *Strickland* standard governs this claim.

### 2.    Federal Review of State Court Decision

As Point XI of Colville's amended Rule 3.850 motion, Colville argued defense counsel was ineffective for failing to move for a statement of particulars,

pursuant to Rule 3.140(n) of the Florida Rules of Criminal Procedure (ECF No. 22-23 at 850–51). Colville alleged the information outlined twelve different counts where Colville allegedly had inappropriate sexual contact with the victim; however, during trial, there were "more than forty (40) different alleged encounters between the victim and himself that were elicited during testimony" (*id.* at 850). Colville alleged if defense counsel had moved for a statement of particulars, it was "quite possible" counsel could have prevented testimony alleging events outside the actual number of charges (*id.* at 851). Colville alleged it was likely the victim's testimony regarding additional encounters "led to an almost automatic, subconscious finding of guilt by the jury," and the jury would have returned a verdict in his favor if defense counsel had requested a statement of particulars (*id.*).

The state court adjudicated Ground Eleven as follows:

> In Ground XI, Defendant claims that trial counsel was ineffective for failing to file a motion for statement of particulars. He makes the following allegations in support of this claim. The information alleged 12 incidents of inappropriate sexual contact between Defendant and the victim, but the victim testified to more than 40 incidents. If trial counsel had filed the motion, it is quite possible that trial counsel could have prevented testimony alleging events outside of the actual number of charges in the information. It is also likely that the jury would have returned a verdict in Defendant's favor.

> The Court finds that Defendant has not demonstrated that trial counsel's performance was deficient or that he was prejudiced. Defendant does not allege that the amended information failed to inform him of the particulars of the offenses sufficiently to enable him

to prepare a defense.  *See* Fla. R. Crim. P. 3.140(n).  He also does not allege that he was hindered in his ability to prepare or raise his defense, which was that the victim fabricated the allegations.  *Bettey v. State*, 244 So. 3d 364, 367 (Fla. 1st DCA 2018) ("Because . . . Appellate was not hindered in his ability to raise a defense, his claim fails.").  The Court therefore concludes that Ground XI should be denied.

(ECF No. 22-24 at 18–19 (footnotes citing trial transcript and amended information omitted)).  The First DCA affirmed without written opinion.

Florida law requires the information to allege the essential facts constituting the offense charged and cite the statute that the defendant allegedly violated.  *See* Fla. R. Crim. P. 3.140(d)(1).  Florida's rule also requires each count of the information to "contain allegations stating as definitely as possible the time and place of the commission of the offense charged in the act or transaction or on 2 or more acts or transactions connected together . . . ."  Fla. R. Crim. P. 3.140(d)(3).  The rules require the court to order the prosecutor to furnish a statement of particulars when the information "fails to inform the defendant of the particulars of the offense sufficiently to enable the defendant to prepare a defense."  Fla. R. Crim. P. 3.140(n).  The statement of particulars must "specify *as definitely as possible* the place, date, and all other material facts of the crime charged that are specifically requested and are *known to the prosecuting attorney . . . .*"  *Id.* (emphases added).

The original information, filed on November 14, 2014, charged ten counts of sexual battery while in a position of familial or custodial authority (Counts 1 through

10), one count of lewd or lascivious molestation (Count 11), and one count of lewd or lascivious conduct (Count 12) (ECF No. 11 at 37–40 (information)).  All of the counts involved the same victim and alleged the conduct occurred between April 1, 2011 and December 31, 2013, with two counts (Counts 5 and 7) alleging the conduct occurred on or about April 1, 2011 (*id.*).  Seven of the sexual battery counts alleged Colville penetrated the victim's vagina with his penis, and the other three counts alleged he penetrated the victim's mouth with his penis (*id.*).  The lewd or lascivious molestation count (Count 11) alleged Colville touched the victim's breasts, genitals, genital area, or buttocks in a lewd or lascivious manner, or forced the victim to touch him (*id.*).  The lewd or lascivious conduct count (Count 12) alleged Colville solicited the victim to take her clothing off and drive around naked (*id.*).

The probable cause affidavit, filed with the court two days after Colville's arrest and provided to the defense less than one month later (*see* ECF No. 22-11 at 20–22 (probable cause affidavit), 46–48 (discovery exhibit)), reflects the victim described to law enforcement the dates of the offenses by stating the sexual abuse started on April 1, 2011, when Colville placed her hand on his penis when she was in eighth grade and thirteen or fourteen years old (*see id.* at 20–21).  The victim told law enforcement Colville began vaginal intercourse and oral sex with her, and it occurred several days a week for years (*id.*).  The victim stated the sexual batteries

occurred at two residential addresses (*id.*).  She stated the last time they had sex was December of 2013 (*id.*).

Months prior to trial, defense counsel deposed the victim, her mother, the victim's cousin, and the protective services investigator (*see* ECF No. 22-11 at 66–67 (motion to incur costs for deposition transcripts), 71–72 (order authorizing defense to incur costs for deposition transcripts)).

On July 2, 2015, ten days prior to jury selection, the State amended the information to expand the time frame for Counts 5 and 7 from April 1, 2011, to between April 1, 2011 and December 31, 2013 (ECF No 22-12 at 16–19 (amended information)).  On July 13, 2015, the morning of jury selection, the prosecutor filed a second amended information adding the language "on one or more occasions" to Counts 1 through 10 (*see* ECF No. 22-1 at 18–19 (transcript of jury selection); ECF No. 22-24 at 22–24 (second amended information)).  Attorney Hamlin objected to the amendment on the following grounds

> [T]hey had ten counts originally that did not have "on one or more occasions," so that would have been something specific to each one. Now, they've added "one or more occasion" to all of those counts.  So now we're dealing with generalities instead of specific charges.

(ECF No. 22-1 at 19–20).

The court reminded defense counsel that the State may amend the information

until the State rested its case, unless the defense could show actual prejudice from

the amendment:

> THE COURT: Can you show actual prejudice based on the fact that you've gotten the discovery information on this case, in depositions, and so forth?
>
> MR. HAMLIN: Well, Your Honor, I—I think that might develop as the case goes on, depending on what the testimony is tailored to these things. So I may have to reserve my comment on that. But as of now, I understand through the—through development of discovery that there may be times where the victim alleges that more than one time something did happen at a particular location, but I don't know that that's the case for all ten.

(ECF No. 22-1 at 20). The court allowed the amendment because the defense did

not show actual prejudice (*id.*).

Colville's defense to all of the charges was that the victim fabricated all of the

allegations, and he was completely innocent. As the state court determined, Colville

failed to show he was not sufficiently informed of the particulars of the charged

offenses to enable him to prepare a defense, nor did Colville allege the preparation

or presentation of the defense would have been any different if defense counsel had

requested a statement of particulars. Moreover, Colville failed to show the

prosecutor knew of a more definite time, place, or other material facts underlying

any of the offenses than was revealed in the victim's pre-trial statements to law

enforcement and child protective services, and her deposition.

Colville has not demonstrated that the state court's rejection of Ground Eleven

on the deficient performance and prejudice prongs was an unreasonable application

of *Strickland*.  Therefore, he is not entitled to habeas relief on Ground Eleven.

### L.    Ground Twelve:  "Ineffective counsel due to cumulative effect of errors."

Colville alleges the following facts in support of this claim:

> Trial counsel was ineffective for allowing a jury to be impaneled without sufficient legal evidence.  Trial counsel had no effect upon issuing a judgment of acquittal which is proof of being ineffective.  The validation of bonds and certificate of indebtedness are noticeably void.  Trial counsel's Machiavellian politics rendered the trial a worthless charade as the trial itself evinces blackmail, bribery, and extortion.  The State's failure to produce a valid certificate of indebtedness and validation of bonds evinces false imprisonment.

(ECF No. 7 at 25) (verbatim).  Colville states he exhausted this claim by presenting

it in the first Rule 3.850 proceeding and post-conviction appeal in First DCA Case

No. 1D20-1776 (*id.*).

The State asserts Colville presented this "cumulative effect" claim on the last

page of his amended Rule 3.850 motion (ECF No. 21 at 57).  The State contends the

state court reasonably rejected the claim because Colville failed to prove defense

counsel committed any of the individual errors alleged in the Rule 3.850 motion (*id.* at 57–58).

In the concluding paragraph of Colville's amended Rule 3.850 motion, Colville argued the cumulative effect of the errors outlined in the preceding eleven claims denied Colville his Sixth Amendment right to effective assistance of counsel because each error, individually, rose to the level of deficient performance on trial counsel's part, and but for the errors there was a reasonable likelihood the outcome of Colville's criminal case would have been different (ECF No. 22-23 at 851).

The state court adjudicated the "cumulative effect" claim as follows:

> In Ground XII, Defendant claims that he was prejudiced by the cumulative effect of trial counsel's errors. Because this Court has concluded that Defendant's other claims should be denied, this Court concludes that Ground XII is without merit and should also be denied.

(ECF No. 22-24 at 19). The First DCA affirmed without written opinion.

The "cumulative effect" or "cumulative error" doctrine provides that the aggregation of non-reversible errors "can yield a denial of the constitutional right to a fair trial, which calls for reversal." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014) (citing *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012)). The federal court must first address the validity of each of the petitioner's claims individually and then examine any errors in the aggregate and in light of the trial as a whole. *Id.* "[T]here is generally no basis for

finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984). Where there is no actual error, the cumulative-error claim has no merit. *Insignares*, 755 F.3d at 1284 (citing *Morris*, 677 F.3d at 1132).

For the reasons discussed *supra*, this court has found no actual error with respect to any of the IAC claims discussed *supra*. In the absence of any actual error, Colville's "cumulative effect" claim asserted in Ground Twelve has no merit.

> **M.    Ground Thirteen:  "The State's failure to certify any Florida Statute charged against the legal fiction DAVID CRAIG COLVILLE evinces fraud."**

Colville alleges the following facts in support of this claim:

> The Secretary of State refuses to certify Florida Statutes because they are not bonded or positive law. The enacting clause of a law may be challenged at any time and since the State refuses to produce the enacting clause of any statute charged they are clearly unconstitutional. Thereby, evincing fraud. One must knowingly and intelligently waive one's rights. The court's deliberate deception of jurors caused them to render an erroneous verdict in opposition to law. The Florida Rape Shield statute is clearly unconstitutional as it deprives one's rights under color of law and denies evidence for a proper defense. This statute conflicts with the crime of defamation.

(ECF No. 7 at 26) (verbatim).  Colville states he exhausted this claim by presenting

it in the second Rule 3.850 proceeding and post-conviction appeal in First DCA Case

No. 1D21-0421 (*id.*).[7]

The State contends Ground Thirteen is without merit (ECF No. 21 at 58–61).

Colville's claim regarding the Florida Secretary of State's failure to "certify"

the criminal statutes under which he was charged and convicted is not cognizable.

The federal habeas statute unambiguously provides that a federal court may issue

the writ to a state prisoner "only on the ground that he is in custody in violation of

the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Federal habeas relief is thus available to correct only constitutional injury.  28 U.S.C.

§ 2254(a); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citations

omitted); *Barclay v. Florida*, 463 U.S. 939, 958–59 (1983) ("Mere errors of state

law are not the concern of this court . . . unless they rise for some other reason to the

level of a denial of rights protected by the United States Constitution.") (citations

omitted).

---

[7] In First DCA Case No. 1D21-421, the appellate court affirmed the circuit court's dismissal of Colville's second Rule 3.850 motion as untimely, procedurally barred, and successive in an order rendered on January 25, 2021 (*see* ECF No. 22-50 at 81–83 (circuit court's order)).  *Colville v. State*, No. 1D21-421, 2021 WL 6110517, at *1 (Fla. 1st DCA Dec. 27, 2021) (Table).

Colville's claim that the Florida Secretary of State failed to "certify" the criminal statutes under which he was charged presents a purely state law claim, not a claim of federal constitutional dimension.  Therefore, Colville is not entitled to federal habeas relief on this claim.

To the extent Colville contends Florida's Rape Shield statute prevented him from presenting his defense, he has not demonstrated that application of the statute interfered with his confrontation rights or otherwise precluded him from presenting a full and fair defense.  Florida's Rape Shield statute provides, in relevant part:

> (1)  The testimony of the victim need not be corroborated in a prosecution under s. 787.06, s. 794.011, or s. 800.04.
>
> (2)  Specific instances of prior consensual sexual activity between the victim and any person other than the offender may not be admitted into evidence in a prosecution under s. 787.06, s. 794.011, or s. 800.04. Fla. Stat. § 794.022(2).  However, . . . when consent by the victim is at issue, such evidence may be admitted if it is first established to the court in a proceeding in camera that such evidence tends to establish a pattern of conduct or behavior on the part of the victim which is so similar to the conduct or behavior in the case that it is relevant to the issue of consent.
>
> (3)  Notwithstanding any other provision of law, reputation evidence relating to a victim's prior sexual conduct or evidence presented for the purpose of showing that manner of dress of the victim at the time of the offense incited the sexual battery may not be admitted into evidence in a prosecution under s. 787.06, s. 794.011, or s. 800.04.

Fla. Stat. § 794.022(1)–(3).

Colville does not allege which provision he is challenging or how it was applied in his case. Rather, he simply alleges the statute "is clearly unconstitutional as it deprives one's rights under color of law and denies evidence for a proper defense" (ECF No. 7 at 26). His arguments in his reply brief provide no additional specificity (ECF No. 26 at 19–20).

It is Colville's responsibility, not this court's, to examine the trial record and identify how application of Florida's Rape Shield statute deprived him of his federal constitutional rights. Nevertheless, the court scoured the record and determined the only possible basis for Colville's claim is the trial court's ruling on the State's motion to exclude evidence of the following:

9.    Any improper character evidence such as:

    a.    evidence or testimony that the victim is pregnant
    b.    evidence or testimony that the victim has previously or is currently dating an older man
    c.    evidence or testimony that the victim's mother has allowed her to date older boys
    d.    evidence or testimony that the victim's mother allowed the victim's boyfriends to spend the night at her residence or that the mother allowed the victim to spend the night at her boyfriend's residence
    e.    evidence or testimony regarding the victim's alleged use of alcohol . . .
    . . . .
    g.    evidence or testimony regarding the contents of the victim's Facebook page

(ECF No. 22-12 at 13–14 (State's motion in limine)).  The trial court held a hearing on the motion on July 7, 2015 (ECF No. 22-10 at 57–92 (transcript)).  Defense counsel conceded he had no basis to object to exclusion of any of the items to the extent they related only to the victim's character (*id.* at 61–67).  With respect to item 9.d., defense counsel argued *if* there was evidence Colville disciplined the victim for this behavior, it would be relevant to the victim's motive or bias (*id.* at 63–65) (emphasis added).  The trial court preliminarily excluded such evidence without prejudice to defense's counsel proffering such evidence (*id.*).  With respect to item 9.e., defense counsel argued such evidence may be relevant to the victim's ability to perceive or recollect events, but counsel proffered no evidence that the victim was drinking at the time of the alleged sexual abuse (*id.* at 63–64).  The court preliminarily excluded such evidence without prejudice to defense counsel's making another proffer of evidence that the victim was drinking during the time the sexual abuse occurred (*id.* at 65–66).

At trial, defense counsel did not seek to present any evidence that fell within any of the court's exclusions.  Moreover, it is apparent from the trial transcript that defense counsel had a fair opportunity to present Colville's defense, i.e., that the victim was fabricating the allegations.  Defense counsel cross-examined the victim regarding the allegations and impeached her credibility with prior inconsistent

statements. Through cross-examination of the State's witnesses and presentation of defense witnesses, defense counsel was able to argue that the victim lacked credibility and fabricated the allegations, and counsel argued possible motives for the fabrication (*see* ECF No. 22-6 at 74–86 (defense counsel's closing arguments)).

Colville has not demonstrated he is entitled to federal habeas relief on the arguments asserted in Ground Thirteen. Therefore, relief should be denied.

### N.    Ground Fourteen: "Ineffective counsel for failure to disclose legal intendment."

Colville alleges the following facts in support of this claim:

> The distance of the silence of the court as to legal intendment denied defendant a fair trial. The lower tribunal refuses to give accounting, 10-40 form, UCC-1., and respond to multiple affidavits. The validation of bonds and certificate of indebtedness are noticeably void. The state refuses to produce sufficient legal evidence. The state has conceded that it committed a statute limitation violation and refuses to act sua sponte evincing an unlawful court. Law cannot demand an impossibility.

(ECF No. 7 at 27) (verbatim). Colville states he exhausted this claim by presenting it in a post-conviction motion and appeal in First DCA Case No. 1D21-0421 (*id.*).[8]

---

[8] As noted *supra*, in First DCA Case No. 1D21-421, the appellate court affirmed the circuit court's dismissal of Colville's second Rule 3.850 motion as untimely, procedurally barred, and successive in an order rendered on January 25, 2021 (*see* ECF No. 22-50 at 81–83 (circuit court's order)). *Colville v. State*, No. 1D21-421, 2021 WL 6110517, at *1 (Fla. 1st DCA Dec. 27, 2021) (Table).

The State argues the basis for Colville's claim is unclear (ECF No. 21 at 62–64). To the extent Colville contends the evidence was insufficient to support his conviction, the State contends the trial court's comments at sentencing demonstrate the evidence was sufficient (*id.* at 63). The State refutes Colville's argument that it conceded a statute-of-limitations violation (*id.* at 64). To the extent Colville challenges his total 330-year sentence as an "impossibility," the State contends the trial court's imposing consecutive sentences was legal (*id.*).

The court discerns only two cognizable claims in Ground Fourteen, a constitutional challenge to the sufficiency of the evidence, and a constitutional challenge to the length of Colville's sentences.

Colville's constitutional challenge to the sufficiency of the evidence derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict, that is, the State must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime charged against the defendant. *See In re Winship*, 397 U.S. 358, 364 (1970). When reviewing a claim of insufficient evidence in federal habeas corpus, the proper inquiry is not whether the reviewing court itself believes that the evidence established guilt beyond a reasonable doubt but "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted); *see also Conklin v. Schofield*, 366 F.3d 1191, 1200 (11th Cir. 2004). The evidence need not rule out every theory except that which signifies guilt beyond a reasonable doubt; "[t]he simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief." *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987). Moreover, because jurors are free to evaluate the credibility of testimony and the weight of the evidence, the court should assume that all conflicting inferences were resolved against the defendant. *Wilcox*, 813 F.2d at 1143.

Viewing the evidence presented at Colville's trial in the light most favorable to the prosecution, and resolving all conflicting inferences in the evidence against Colville, including conflicts between his testimony and the testimony of the victim and her cousin, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. Colville thus is not entitled to habeas relief on his challenge to the sufficiency of the evidence.[9]

Colville's remaining argument is a challenge to his total sentence (ECF No. 26 at 21). Colville argues his 330-year sentence for non-capital offenses violates the

---

[9] Because Colville's challenge to the sufficiency of the evidence is without merit, he cannot succeed on a related ineffective assistance of counsel claim based upon counsel's failure to challenge the sufficiency of the evidence, to the extent he asserts one.

Due Process Clause and the Eighth Amendment because it exceeds the sentences of "most prisoners with more heinous offenses" (*id.*).

Colville presented this claim in his rule 3.800(b)(2) motion (ECF No. 22-17 at 12–17). Colville argued his 330-year sentence was a de facto life sentence (*id.* at 14–16). He argued the Florida Legislature did not authorize a life sentence for his offenses (*id.*). Applying the three factors recognized in *Solem v. Helm*, 463, U.S. 277, 292 (1983), Colville argued his sentence was grossly disproportionate to the crimes (*id.*). The circuit court denied the Rule 3.800 motion without providing the reasoning or rationale for its decision (*id.* at 20–21). Colville presented this claim on direct appeal (ECF No. 22-19 at 83–85). The First DCA affirmed the judgment and sentences without written opinion. *Colville v. State*, 227 So. 3d 567 (Fla. 1st DCA 2017) (Table).[10]

"[T]he summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law

---

[10] If Colville is presenting an ineffective assistance of counsel claim for failing to challenge the constitutionality of his sentence, the record clearly refutes any argument that counsel failed to raise it.

procedural principles to the contrary."). Where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision. *See Richter*, 562 U.S. at 98. The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See id.* at 102.

The Eighth Amendment of the United States Constitution states that "cruel and unusual punishments [shall not be] inflicted." According to the Supreme Court, this clause "prohibits . . . sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). However, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Id.* at 289–90 (quotation and edits omitted). In *Helm*, the defendant was sentenced to life imprisonment without parole for writing a "no account" (worthless) check for $100. 436 U.S. at 281. The defendant was previously convicted of six felonies, including three convictions for third-degree burglary, one conviction for obtaining money under false pretenses, one conviction for grand larceny, and one conviction of driving while intoxicated (third offense). *See id.* at 279–80. The Supreme Court

noted that Helm's worthless check offense was "one of the most passive felonies a person could commit. . . .  It neither involved violence nor threat of violence to any person." *Id.* at 296.  Further, all of Helm's prior crimes were nonviolent, and none was a crime against a person.  *Id.* at 297.  The Supreme Court stated that when sentences are reviewed under the Eighth Amendment, courts should be guided by objective criteria, including:  "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292.  The Court concluded that the sentence of life imprisonment without parole was "significantly disproportionate to [the] crime, and . . . therefore prohibited by the Eighth Amendment." *Id.* at 303.

But years later, in *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Supreme Court recognized that its five-to-four decision in *Helm* "was scarcely the expression of clear and well accepted constitutional law."  501 U.S. at 965.  The Court went on to conclude that the Eighth Amendment contains no proportionality guarantee, except perhaps in the death penalty context.  *Id.* at 965, 994.  The Court then considered the defendant's argument that his sentence of life imprisonment without parole for possessing 672 grams of cocaine violated the Eighth Amendment, because it was imposed without any consideration of so-called mitigating factors, such as the

fact that he had no prior felony convictions.  *Id.* at 994.  The Court recognized that, as with proportionality, an individualized determination that a punishment is "appropriate" is required in the death penalty context.  *Id.* at 995.  However, the Court refused to extend the so-called "individualized capital-sentencing doctrine" to non-capital sentences.  *Id.*   The Court upheld Harmelin's sentence of life imprisonment without parole as constitutional.

After *Harmelin*, the Supreme Court considered Eighth Amendment challenges to non-capital sentences imposed pursuant to recidivist laws.  In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court considered whether "two consecutive terms of 25 years to life for stealing approximately $150 in videotapes is grossly disproportionate in violation of the Eighth Amendment" when imposed under California's "three strikes" law.  538 U.S. at 70.  The Supreme Court noted that the only relevant clearly established law amenable to the "contrary to" or "unreasonable application of" framework of § 2254(d)(1) "is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."  *Id.* at 73 (citing *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in judgment); *Helm*, 463 U.S. at 290; *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)).  The Supreme Court held that the California Court of Appeal's decision affirming Andrade's two

consecutive terms of 25 years to life in prison for a "third strike" conviction was not

"contrary to" or an "unreasonable application" of "clearly established" law.  538

U.S. at 76.

In *Ewing v. California*, 538 U.S. 11 (2003), the defendant shoplifted three golf

clubs, each valued at $399.  538 U.S. at 18.  Because the defendant had prior

convictions of three burglaries and a robbery, he was sentenced to prison for twenty-

five years to life under California's "three strikes" law.  *Id.* at 20.  The Supreme

Court considered the gravity of the offense compared to the harshness of the penalty,

but noted that the gravity of the offense was not merely shoplifting three golf clubs;

rather, it was felony grand theft for stealing nearly $1,200 worth of merchandise

after previously having been convicted of a least two "violent" or "serious" felonies.

*Id.* at 28.  The Court determined that Ewing's sentence was justified by the State's

public-safety interest in incapacitating and deterring recidivist felons, and held that

it was not grossly disproportionate and therefore did not violate the Eighth

Amendment.  *Id.* at 30–31.

Also noteworthy is the Supreme Court's holding in *Rummel v. Estelle*, that

the defendant's life sentence imposed under the State of Texas's recidivist statute—

upon being convicted of his third felony for obtaining $120.75 by false pretenses

and after being previously convicted of passing a forged check in the amount of

$28.36 and of fraudulently using a credit card to obtain $80 worth of goods or services—did not violate the constitutional ban on cruel and unusual punishment. 445 U.S. 263, 265–66 (1980).

Additionally, in *Hutto v. Davis*, the Supreme Court held that the defendant's two consecutive sentences of 20 years in prison upon his conviction of possession with intent to distribute, and distribution of, approximately 9 ounces of marijuana, was not cruel and unusual punishment, where the state statutes authorized a sentence of five to forty years for each offense.  454 U.S. 370, 374–75 (1982).

This history of Supreme Court cases applying the proportionality doctrine demonstrates that except for the life sentence imposed for the "most passive felony one could commit" in *Helm*, the Supreme Court has not reversed a non-capital, adult sentence for a term of years on Eighth Amendment grounds.

In Colville's case, the statutory maximum sentence for each of the first degree felony convictions on Counts 1 through 10 was a term of years not exceeding life imprisonment.  *See* Fla. Stat. §§ 794.011(8)(b), 775.082(3)(b)1.  The statutory maximum for the second degree felony convictions on Counts 11 and 12 was fifteen years. *See* Fla. Stat. §§ 800.04(5)(c)2., 800.04.(6)(b), 775.082(3)(d).

Florida statutes provide as follows with respect to when sentences are to be concurrent and consecutive:

> (1) A defendant convicted of two or more offenses charged in the same indictment, information, or affidavit . . . shall serve the sentences of imprisonment concurrently unless the court directs that two or more of the sentences be served consecutively. . . .  Any sentence for sexual battery as defined in chapter 794 . . . must be imposed consecutively to any other sentence for sexual battery or murder which arose out of a separate criminal episode or transaction.

Fla. Stat. § 921.16(1).

Each of Colville's sentences was within Florida's statutory limit, and the court's ordering all of them to run consecutively was within its statutory discretion. Further, unlike *Helm*, none of Colville's offenses (sexual battery and lewd and lascivious molestation and conduct) was the "most passive felony one could commit."

Colville has not demonstrated that the state court's rejection of his proportionality claim was contrary to or an unreasonable application of clearly established federal law.  Therefore, he is not entitled to federal habeas relief on this claim.

### O.    Ground Fifteen:   "Ineffective counsel for failing to challenge subject-matter jurisdiction."

Colville alleges the following facts in support of this claim:

> Defacto law cannot escape its boundary in association with a public estate, nor can the legal construction of law its boundary with legal estate.  Any contestation to a particular action, which extends the boundary is a statute limitation violation, and no such action can be lawfully enforceable.  (See Exhibit B).  The ENS LEGIS device is not

> in its proper legal station.  In order for the jurisdiction of a court to be authorized the accused must consent, as plead guilty.  If the accused contest the crime (separating) there can be no conversion unless sufficient legal evidence of the crime exist.  DAVID CRAIG COLVILLE was dis-charged from a legal estate without legal cause.

(ECF No. 7 at 28) (verbatim).  Colville states he exhausted this claim by presenting it in a post-conviction motion and appeal in First DCA Case No. 1D20-1783 (*id.*).[11]

The exhibit referenced by Colville is a document titled, "Demonstrative Evidence in Support of Writ of Habeas Corpus" with an attached copy of Colville's birth certificate (ECF No. 7-1 at 1–4, 6–7).  Colville asserts he was "unlawfully forfeited" and requests that the "forfeiture" be set aside (*id.*).  Colville asserts prior to his arrest, he "possessed a legal certified state of innocent" as evidenced by his birth certificate (*id.*).  He asserts any charge brought against "the legal estate, DAVID CRAIG COLVILE," must be "certified" (*id.*).  Colville discusses the process required for "contract crimes," including a "notification of a conviction of a contract crime" which "produces the effect of a forfeiture" and enables the judge to "issue the impannelment of a party-jury" (*id.*).  Colville states the "forfeiture" is "an actual loss of a state of innocent" (*id.*).  He states "[t]he legal estate of the individual

---

[11] In First DCA Case No. 1D20-1783, the appellate court affirmed the circuit court's denial of Colville's Motion to set Aside Judgment as untimely, successive, and non-compliant with the requirements of Rule 3.850(c), (h), and (n) (*see* ECF No. 22-31 at 446–67 (circuit court's order); ECF No. 22-35 (First DCA's decision)).  *Colville v. State*, 308 So. 3d 565 (Fla. 1st DCA 2020) (Table).

then trancends into the personal estate of an individual, exposing his public character" (*id.*).  Colville goes on to discuss the "conveyance court," a "writ to challenge the plevin," and so forth (*id.*).

The State argues Colville's challenge to the circuit court's subject matter jurisdiction is without merit, therefore, trial counsel was not deficient to failing to challenge it (ECF No. 21 at 64–65).

As discussed *supra*, Colville was charged with twelve felonies.  In Florida, all circuit courts have exclusive original jurisdiction "[o]f all felonies and of all misdemeanors arising out of the same circumstances as a felony which is also charged."  Fla. Const. Art. V § 20(c)(3); Fla. Stat. § 26.012(2)(d).  The circuit court thus had subject matter jurisdiction over Colville's trial and sentencing, regardless of Colville's lack of consent, and any argument to the contrary is frivolous.

To the extent Colville challenges the sufficiency of the evidence, that claim was discussed and rejected in Ground Fourteen *supra*.  Colville is not entitled to federal habeas relief on Ground Fifteen.

**P.    Ground Sixteen:  "Fraud on the court and the filing of fraudulent charging information."**

Colville alleges the following facts in support of this claim:

The state attorney refuses to certify charges in record, evincing fraud.  The original information sworn under penalty of perjury consisted of three charges.  The second information was sworn to

> detailing twelve charges and at trial over forty-two erroneous charges were told to the jury of which the defense had never heard. The charging document in court record claiming the date of 4/1/2011 as to all counts evinces an impossibility and is unsupported by the record. The prosecution concealed the lead detective's testimony because she knew or should have known they were false charges and used perjured testimony to convict an innocent man. This clearly violates any double jeopardy right and was sued as a vindictive tool for a defacto life sentence for non-capital offenses.

(ECF No. 7 at 29) (verbatim). Colville states he exhausted this claim by presenting it in a post-conviction motion and appeal in First DCA Case No. 1D20-0709 (*id.*).[12]

The State argues Colville's claims of prosecutorial misconduct based upon false charges, perjured testimony, and insufficient evidence are without merit as discussed *supra* in Colville's previous grounds (ECF No. 21 at 65–66). The State argues the circuit court denied Colville's post-conviction claims on the merits, and the First DCA upheld that decision, which was not contrary to or an unreasonable application of federal law (*id.* at 66).

The only claim presented in Ground Sixteen that has not already been addressed in the court's discussion of Grounds One through Fifteen is Colville's claim that the prosecutor "concealed the lead detective's testimony." The state court

---

[12] In First DCA Case No. 1D20-0709, the appellate court affirmed the circuit court's denial of Colville's third Rule 3.850 motion as untimely and procedurally barred (*see* ECF No. 22-50 at 147–49 (circuit court's order); (ECF No. 22-52 (First DCA's decision)). *Colville v. State*, 324 So. 3d 32, 33 (Fla. 1st DCA 2021) (Mem).

record demonstrates the lead detective was Detective Monica Nicole Toole from the Santa Rosa County Sheriff's Office (ECF No. 22-11 at 19–22 (probable cause affidavit)).  Detective Toole prepared and signed the probable cause affidavit in support of the arrest warrant, which issued on October 10, 2014 (*id.*).  The State disclosed Detective Toole and her report and probable cause affidavit during discovery (*id.* at 46–48 (discovery exhibit)).  The prosecutor did not conceal this information from the defense.  Indeed, the defense deposed Detective Toole and obtained funds for the transcript of her deposition (*see id.* at 102–03 (order authorizing defense to incur costs for deposition transcripts)).  The fact that the prosecutor did not present Detective Toole's testimony at trial does not suggest any misconduct on her part.

Colville also contends the prosecutor engaged in malicious prosecution by filing and proceeding on the charges despite her knowledge that the victim previously made inconsistent statements during her deposition in a divorce case, wherein she stated nothing had happened to her (*see* ECF No. 26 at 23).  As discussed in Ground Two *supra*, defense counsel exposed the victim's inconsistent statements, including her statement during the civil deposition.  The jury evaluated the credibility of the victim and all other trial witnesses and determined the testimony

established Colville's guilt beyond a reasonable doubt.  Colville is not entitled to

federal habeas relief on Ground Sixteen.

> **Q.  Ground Seventeen:  "Ineffective counsel and fraud on the court by willfully deceiving the jury."**

Colville alleges the following facts in support of this claim:

> Deliberate deception of a court and jurors in a criminal case by the prosecution of false evidence is incompatible with the rudimentary demands of justice.  The prosecution used perjured testimony to convict while concealing all law enforcement and misleading the jury to believe one sole DCF worker was an officer of the law.  Prosecution altered definitions of words to manipulate jury. (See Exhibit A).  The Court even questioned this deception and still went along with it. (See Exhibit C, D)  The jury was told reasonable doubt was legalese.  The charge was not a legal definition.  Colville was guilty and the prosecution was more credible.  The DCF worker was prejudice. (See Exhibit P)

(ECF No. 7 at 30) (verbatim).  Colville states he exhausted Ground Seventeen by

presenting it in a post-conviction motion and appeal in First DCA Case No. 1D20-

0709 (*id.*).[13]  The exhibits referenced by Colville are excerpts from the trial transcript

(*see* ECF No. 7-1 at 5, 8, 9, 43).

The State argues Colville's claim of prosecutorial misconduct was discussed

in Ground Three (ECF No. 21 at 67).  The State further argues Colville cannot

demonstrate he was prejudiced by defense counsel's alleged failure to object to the

---

[13] As noted *supra*, in First DCA Case No. 1D20-0709, the appellate court affirmed the circuit court's denial of Colville's third Rule 3.850 motion as untimely and procedurally barred.

jury instruction characterizing the child protective investigator as a person employed by law enforcement (*id.* at 67–68). The State argues the First DCA's ruling upholding the circuit court's denial of Colville's IAC claim was not contrary to or an unreasonable application of federal law (*id.* at 68).

One of the exhibits referenced by Colville in Ground Seventeen is an excerpt of the prosecutor's closing argument wherein she told the jury there was no legal definition of "familial or custodial authority" (*see* ECF No. 7-1 at 5 (Exhibit A)). One of the elements of Counts 1 through 10 was that Colville "stood in the position of familial or custodial authority with regard to [the victim]" (ECF No. 22-12 at 37, 39 (jury instructions)). The jury instructions did not include a legal definition of this element (*see id.*). During the prosecutor's closing argument, she argued the following with respect to this element:

> Now, you are not going to hear a legal definition of familial or custodial authority; but I would submit to you that you can use your common sense in defining that.
>
> The defendant became a part of [the victim's] life when she was three years old. He married her mother. He became her stepfather. She called him Dad. She considered him to be her dad. He acted in regards or towards [the victim] the way a father would. Even though he took the stand today and minimized that, I would submit to you the bottom line is that this was his daughter for all intensive [sic] purposes. So that is the second element.

(ECF No. 7-1 at 5 (Colville's Exhibit A); ECF No. 22-6 at 49 (trial transcript)).

Neither the sexual battery statute nor the standard jury instructions includes a definition of "familial or custodial authority."  *See* Fla. Stat. § 794.011(8)(b); Fla. Standard Jury Instr. in Crim. Cases, Part Two:  Instrs. on Crimes, Chp. 11 § 11.6.  In *Hallberg v. State*, 649 So. 2d 1355 (Fla. 1994), the Florida Supreme Court affirmed there was no statutory definition of "custodial authority" and held "the term 'custodial,' absent a statutory definition, must be construed in accordance with the commonly understood definition as one having custody and control of another."  *Id.* at 1358.

The Florida Supreme Court's decision in *State v. Rawls*, 649 So. 2d 1350 (Fla. 1994), discusses the familial authority setting.  Although *Rawls* specifically dealt with a "*Williams* rule"[14] issue (i.e., the admission of similar fact evidence), the decision discusses in detail what is involved in a "familial relationship."  The Florida Supreme Court held that familial relationship requires "a recognizable bond of trust with the defendant, similar to a bond that develops between a child and his [or her] grandfather, uncle or guardian."  *Id.* at 1353.

Colville has not shown the prosecutor's comment regarding the "familial or custodial authority" element was objectionable, or that there is a reasonable probability the result of his trial would have been different if defense counsel had

---

[14] *See Williams v. State*, 110 So. 2d 654 (Fla. 1959).

objected to the comment.  Colville thus is not entitled to habeas relief on this part of Ground Seventeen.

This leaves Colville's claim concerning the jury instruction regarding testimony of a witness employed by law enforcement:

> The fact that a witness is employed in law enforcement does not mean that her testimony deserves more or less consideration than that of any other witness.

(ECF No. 22-12 at 44 (jury instructions)).

Whether to include this instruction was discussed during the charge conference:

> THE COURT:  We didn't have anybody in law enforcement.  It was just a D.C.F. worker.

> MS. PACE [the prosecutor]:  Correct.

> THE COURT:  Not just a D.C:F. worker, but they're generally considered different than law enforcement.  Anybody requesting me to leave that in?

> MS. PACE:  No, sir.

> MR. HAMLIN [defense counsel]:  I think I might ask for it to be in just because of the perception that it's an investigator.  It's—

> THE COURT:  I'll leave it in.  I think it's harmless.

> MR . HAMLIN:  I think she was wearing a badge.

> THE COURT:  Yeah.  And I think it's harmless even if it doesn't apply, so I'll leave it in.

MS. PACE:  Your Honor, the only objection I have to that is that somehow it leaves the impression that she's a law enforcement officer, when she's not; and she clearly said that she's not a law enforcement officer.  The jury could be left with the impression that she was.

THE COURT:  But it doesn't—the instruction doesn't say, "You have heard the testimony of a law enforcement officer."

MS. PACE:  Okay.

THE COURT:  It just says the fact that a witness is employed by law enforcement—it just kind of flows in with the rest of the instruction.

MS. PACE:  Okay.  Thank you.

(ECF No. 22-6 at 28–29).

Colville has not shown defense counsel performed deficiently by requesting the instruction on law enforcement witnesses.  The child protective investigator, Rebecca Williams, testified she investigated an allegation of child abuse and shared the information with law enforcement (ECF No. 22-4 at 38–42, 48–59).  Even if the jury was left with the impression that the investigator was a law enforcement officer, the instruction was harmless.  The instruction did not bolster Ms. Williams' creditability, rather it instructed the jury that any law enforcement witness's testimony *did not deserve more or less consideration than any other witness*.  Colville has not shown he was prejudiced by defense counsel's requesting the jury

instruction at issue; therefore, he is not entitled to habeas relief on this remaining part of Ground Seventeen.

**R.    Ground Eighteen:  "Fraud on the court by the use of LEGAL FICTION evincing organized crime."**

Colville alleges the following facts in support of this claim:

> The court's use of bribery, extortion, fraud, barratry and personage by the use of legal fictions evinces inland piracy and organized crime.  Commercial law is deceptively established by U.S.C. Title 18 B7(3) whereby, the lower tribunal court has destroyed the illusion of common law.  Commercial law suspends the constitution and is used to overcome the checks and balances of common law. (See Exhibit E and F) Revenue has destroyed justice by the darkness of greed (See Exhibit G) which is counterfeit security.  Defrauding americans into prison for non-existent crimes is not law, it is crime.  The Validation of bonds are noticeably void and Colville gave notice to the lower court of an unlaw act which is disavowed (See Ex. L) These facts evince perjury of all F.D.O.C. employees (See F.D.O.C. oath)

(ECF No. 7 at 31) (verbatim).  The exhibits referenced by Colville are the following:

Exhibit E:    "American Bar Association Name Game
david craig colville–living man"

Exhibit F:    "The Seven Steps to Enslavement (Racketeering Scheme)"

Exhibit G:    "Your CUSIP [Committee on Uniform Securities Identification Procedures] Results"

(ECF No. 7-1 at 10–12).  Colville attached additional exhibits to his reply (*see* ECF No. 26 at 25 (referencing attached Exhibits E, Y, Z); ECF No. 26-1 at 55–58, 179–91).

The State argues Ground Eighteen is a sovereign citizen argument similar to the jurisdictional argument asserted in Ground Fifteen (ECF No. 21 at 69). The State contends Colville's claim is without merit for the same reasons as Ground Fifteen (*id.*).

Colville's arguments appears to be largely derived from what has been described as the "Sovereign Citizen Movement," which generally advances the argument that individuals, as natural humans, are their own "Secured Party Sovereigns" and are citizens of the United States only by contracts which are constrained through such laws as the Uniform Commercial Code (UCC), one of the results evidently being that the individual is not properly or jurisdictionally subject to the criminal laws of the state or federal government. *See, e.g.*, *United States v. Brown*, 669 F.3d 10, 19 n.12 (1st Cir. 2012) (noting that sovereign citizens "believe they are not subject to federal or state statutes or proceedings, reject most forms of taxation as illegitimate, and place special significance in commercial law"); *Gravatt v. United States*, 100 Fed. Cl. 279, 282, 286–89 (2011) (noting sovereign citizens "believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings."); *Schlager v. Beard*, 398 F. App'x 699, 701 (3d Cir. 2010)

(stating that the plaintiff's argument that he was entitled to release from prison because he is a "Secured Party Sovereign" was "the epitome of frivolous.").

The court construes Ground Eighteen as challenging the Florida circuit court's jurisdiction over the state criminal proceedings and rejects Colville's arguments for the reasons discussed in Ground Fifteen *supra*. *See, e.g.*, *Linge v. State of Ga.*, 569 F. App'x 895, 896 (11th Cir. 2014) ("[T]o the extent that [the appellant] more broadly argues he is a sovereign citizen and is not subject to the jurisdiction of Georgia state courts or Georgia laws, both we and the district court lack jurisdiction to consider his claim because it is wholly insubstantial and frivolous"); *United States v. White*, 480 F. App'x 193, 194 (4th Cir. 2012) ("Neither the citizenship nor the heritage of a defendant constitutes a key ingredient to a . . . court's jurisdiction in criminal prosecutions . . . ."). Colville is not entitled to federal habeas relief on Ground Eighteen.

### S.    Ground Nineteen:  "Ineffective counsel and fraud on the court for unlawful sentence."

Colville alleges the following facts in support of this claim:

> The State of Florida etc. et al committed a statute limitation violation and caused a misentry on a LEGAL ESTATE. The State or its agents cannot produce a valid certificate of indebtedness. All State actors have refused to refute any affidavit in court record whereby conceding that it is unlawful and refuse to act, evincing crime. All State actors refuse to state under penalty of perjury that a 330 year defacto life sentence for non-existent crimes is lawful. Law cannot demand an

> impossibility and anything against reason is unlawful.  Railroading into
> capital sentences by mentally incompetent juries for non-existent
> crimes on false evidence and perjured testimony is unlawful.  Evidence
> of a rogue jury (See Ex. L).  During voir dire when the prosecution
> solicited only jurors willing to convict on testimony alone destroyed the
> party jury.

(ECF No. 7 at 32) (verbatim).  In Colville's reply, he repeats his constitutional

challenges to his sentence discussed in Ground Fourteen, *supra* (*see* ECF No. 26 at

26).  Colville states he exhausted Ground Nineteen by presenting it in a post-

conviction motion and appeal in First DCA Case No. 1D21-1263 (*id.*).  That appeal

involved the circuit court's denial of Colville's motion to disqualify Judge Darlene

Dickey from Colville's post-conviction proceedings (*see* ECF No. 22-64  at 36–39

(motion to disqualify)).

    The State asserts the state court's adjudication of Ground Nineteen was not

contrary to or an unreasonable application of federal law (ECF No. 21 at 69–70).

    Colville's motion to disqualify included arguments that Judge Dickey's order

denying Colville's first Rule 3.850 motion was a "false report, as the validation of

bonds and certificate of indebtedness are noticeably void" (ECF No. 22-64 at 36–

39).  Colville argued the charges were not "certified," and Judge Dickey failed to

acknowledge perjured testimony, prosecutorial misconduct, insufficient evidence,

"rogue juries," unlawful sentences for "non-existent crimes," racketeering,

conspiracy, etc. (*id.*).  The circuit court denied the motion to disqualify as legally

insufficient, pursuant to Fla. R. Jud. Admin. 2.330(h) (*id.* at 51 (order)).  The First

DCA affirmed per curiam without written opinion.  *Colville v. State*, No. 1D21-

1263, 2021 WL 6110551, at *1 (Fla. 1st DCA Dec. 27, 2021) (Table).

Federal habeas relief is available to remedy defects in a defendant's

conviction and sentence, but "an alleged defect in a collateral proceeding does not

state a basis for habeas relief."  *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir.

2004); *see also Alston v. Dep't of Corrs., Fla.*, 610 F.3d 1318, 1325 (11th Cir. 2010);

*Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases).

There is a valid reason behind this principle:  "[A] challenge to a state collateral

proceeding does not undermine the legality of the detention or imprisonment—i.e.,

the conviction itself—and thus habeas relief is not an appropriate remedy."  *Carroll*,

574 F.3d at 1365.  Furthermore, such challenges often involve issues of state law,

and "[a] state's interpretation of its own laws or rules provides no basis for federal

habeas corpus relief, since no question of a constitutional nature is involved."

*McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992).

The subject of Colville's motion to disqualify was the judge presiding in the

post-conviction proceedings, not the judge who presided at trial and sentencing.  The

claim thus does not undermine the legality of Colville's imprisonment.  Further,

Colville's claim involves the state court's interpretation of Rule 2.330(h) of the

Florida Rules of Judicial Administration.  As discussed numerous times throughout this Report and Recommendation, the federal habeas court must defer to the state court's interpretation of state law.  Ground Nineteen does not state a basis for federal habeas relief.

### T.    Ground Twenty:  "Ineffective counsel and fraud on the court for failure to produce sufficient legal evidence."

Colville alleges the following facts in support of this claim:

> The assistant state attorney failed to produce sufficient legal evidence in order to promote a legal charge.  The court's failure to adhere to foreign legal requisites which require the showing of sufficient legal evidence to impannel a jury destroys the appearance of law.  A rogue jury cannot validate a privy-verdict.  The Validation of bonds and Certificate of Indebtedness are notably void (See Exhibit H) and attached affidavits listed as exhibits (See Exhibits I, J, K, M, N, Q)

(ECF No. 7 at 31) (verbatim).  Colville states he presented this claim "multiple times in open court" and appeals to the First DCA (*id.*).  The exhibits referenced by Colville are the following:

Exhibit H:    "Claim of Legal Innocent" and attachments

Exhibit I:     "Affidavit on Testimony"

Exhibit J:     "Affidavit on Oath"

Exhibit K:    "Contention of Law"

Exhibit M:   "Declaration of David Colville"

Exhibit N:  "Public Notice"

Exhibit Q:  "Affidavit on Oath"

(ECF No. 7-1 at 13–37, 38–41, 44–45).

The State argues Colville's claims were addressed in Grounds Seven and Sixteen *supra* (ECF No. 21 at 71).

Colville characterizes the State's answer as a concession he is entitled to relief:

> The State Attorney Generals failure to address this issue or respond to any affidavit listed as an exhibit is proof of claim by tacit admission.  Therefore, as the State of Florida's Attorney General has conceded by default that the Validation of Bonds and Certificate of Indebtedness are noticeably void, relief is warranted as false imprisonment is apparent.

(ECF No. 26 at 27) (verbatim).

To the extent Colville asserts an IAC claim based upon trial counsel's failure to challenge the sufficiency of the evidence, the claim is refuted by the state court record.   The trial transcript demonstrates defense counsel made a motion for judgment of acquittal (JOA) at the close of the State's case, arguing the State failed to meet its burden of presenting sufficient evidence to prove the charges (ECF No. 22-7 at 68–69).  The trial court denied the motion on the ground that the evidence was legally sufficient to submit the case to the jury (*id.* at 69–70).  At the close of all the evidence, defense counsel renewed the motion for JOA on the same grounds

(ECF No. 22-9 at 16–17). The trial court denied it for the same reason (*id.* at 17). This record refutes Colville's IAC claim based upon counsel's failure to challenge the sufficiency of the evidence. To the extent Colville asserts a constitutional challenge to the sufficiency of the evidence independent of an IAC claim, the court addressed this claim in Ground Fourteen *supra*.

Colville's references and arguments related to foreign legal requisites, validation of bonds, and certificate of indebtedness are the same "sovereign-citizen-type" arguments addressed in Ground Eighteen *supra*. Colville failed to demonstrate he is entitled to federal habeas relief on Ground Twenty.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537

U.S. at 336 (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    The amended petition for writ of habeas corpus (ECF No. 7) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

3.    The clerk be directed to enter judgment accordingly and close the case.

At Pensacola, Florida, this 7<u>th</u> day of March 2022.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.